# No. 25-2247

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

GIDEON RAPAPORT, an individual,

*Plaintiff-Appellant,*

—against—

ABIGAIL FINKELMAN, an individual,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK

Case No. 1:24-cv-05439-JGLC, Hon. Jessica G. L. Clarke

## BRIEF OF PLAINTIFF-APPELLANT

GIDEON RAPAPORT, *pro se*
#627 1078 Summit Avenue
Jersey City, New Jersey 07307
Telephone: (862) 213-0895

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION................................................................................1

STATEMENT OF THE ISSUES.................................................................................1

STATEMENT OF THE CASE......................................................................................5

A.      Local Rule 28.1(b) Summary........................................................................5

B.      Finkelman Republishes The Defamatory Forged Image Amid A Series Of Offensive And Outrageous Publications..............................................................5

C.      Finkelman Blocks From Public View Her X Account After Receiving Service Waiver Form.....................................................................................................7

D.      Finkelman Through Counsel Threatens And Actually Brings Sanctions Motion....7

E.      Finkelman Admits Intent To Satirize And Mock The Plaintiff...............................8

F.      District Court Dismisses The Complaint With Prejudice And Collateral Proceedings Ensue.........................................................................................8

STANDARD OF REVIEW.........................................................................................10

ARGUMENT..............................................................................................................12

A. The District Court Erred In Concluding That The Forged Image Republished By Defendant Finkelman's Was Defamatory.....................................................................12

B. The District Court Erred In Concluding That Defendant Finkelman's Publications Were Part Of A Fair And True Report......................................................................16

      Defendant Finkelman's Tweets/Posts Were Not A Report or Reports of a Judicial Proceeding..........................................................................................16

      Defendant Finkelman's Tweets/Posts Were Not Fair and True Even If Taken As A Report Or Reports........................................................................................18

The Forged Image Was Never Part of Any Judicial or Official Record When Defendant Finkelman Republished It......................................................................19

The Forged Image Is Not Background Material But Rather The Defamation At Issue In The Original Doe Action...........................................................................21

C. The District Court Erred In Finding That New Jersey Law Did Not Appy To The False Light And Invasion of Privacy Claim...............................................................22

D. The District Court Clearly Erred and Abused Its Discretion By Failing To Sanction Defendant Finkelman And Max Rodriguez of Max Rodriguez PLLC For Egregious Abuse Of The Sanctions Process And Collateral Proceedings......................................25

E. The District Court Clearly Erred and Abused Its Discretion By Refusing to Entertain Any FRCP 59 or FRCP 60 Motions.................................................................29

CONCLUSION................................................................................................32

## **STATEMENT OF JURISDICTION**

The district court had subject-matter jurisdiction under 28 U.S.C. § 1332 because there was (and is) alienage jurisdiction and the amount in controversy exceeds $75,000, exclusive of interest and costs. The district court ordered a dismissal with prejudice of the Complaint on August 29, 2025.

The plaintiff timely sought leave per Rule 59(e) to alter or amend the judgment or for relief per Rule 60 in a timely fashion but was informed that neither such motion would ever be considered.

Under Federal Rule of Appellate Procedure 4(a)(1)(A), Plaintiff-Appellant timely filed a Notice of Appeal on September 5, 2025, fewer than 30 days after the district court's judgment became final. This Court has jurisdiction to hear Plaintiff-Appellant's appeal from that final judgment under 28 U.S.C. § 1291.

## **STATEMENT OF THE ISSUES**

1.	Well-settled New York precedent establishes that defamation is false and tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society. In his Complaint, the plaintiff alleged that defendant Finkelman defamed him by republishing a forged image on X, formerly known as Twitter, falsely depicting through digital image manipulation techniques, a

"DO NOT ADMIT" notice containing an image of the plaintiff's face, his full name, and that of his recent employer, Kirkland & Ellis LLP, at the security desk of that firm's New York office. In reality such a notice was never issued nor displayed, and the plaintiff was never barred from those premises. Did the district court err in deciding that as a matter of law, the publication of such a forged image could never be considered defamatory and was rather unactionable opinion?

2.        New York Civil Rights Law § 74 provides immunity "for the publication of a fair and true report of any judicial proceeding" while specifically excluding "libel contained in any other matter added by any person concerned in the publication". Defendant Finkelman represented that her post republishing the forged image and attributing it to an "anonymous tipster" deserves such immunity even though the forged image was not in the record of any judicial proceeding at the time of her republication, and was part of a series of vulgar posts describing the plaintiff as a "monster" created by "ghouls" which contained no actual truthful information about any judicial proceeding and instead contradicted the record with false quotations for the admitted purposes of humiliating the plaintiff and amusing herself. Did the district court err in deciding that defendant Finkelman's republication of the forged image was deserving of fair and true report immunity?

3.        Well-settled New York precedent establishes that for the purposes of conflicts of laws analysis a single set of transactions and occurrences may give rise to

multiple claims according to the laws of multiple jurisdictions, and that a jurisdictional interest balancing analysis is required for each and every issue. In his Complaint, the New Jersey plaintiff brought a claim for false light and invasion of privacy, which is recognized by New Jersey and protects the privacy and mental tranquility of persons from individual emotional harm. Did the district court err in deciding that only New York law would apply to the false light and invasion of privacy claim and the action in general?

4.      District courts possess inherent authority to impose sanctions for conduct that abuses the judicial process, including the weaponization of the sanctions process itself through frivolous or harassing motions for sanctions. Defendant Finkelman and her counsel, Mr. Max Rodriguez of Max Rodriguez PLLC, have repeatedly and vexatiously harassed and burdened the plaintiff with frivolous sanctions and other collateral proceedings, also wasting substantial judicial resources. In response to these improper threats of sanctions eventually acted upon (and since repeated and multiplied with other collateral proceedings) by defendant Finkelman and her counsel the plaintiff moved for sanctions under the inherent authority of the district court to prevent such a cynical and outrageous abuse of the sanctions process. Did the district court abuse its discretion by denying the plaintiff's motion for sanctions, thus failing to protect the judicial process and the pro se plaintiff from repeated vexatious and bad-faith harassment?

3

5.        Pursuant to FRCP Rules 59 and 60 a party may move to alter or amend a judgment or for relief from a judgment or order. The plaintiff sought leave to so move and was informed by the district court that it would consider no such motion, in part because the plaintiff had already filed a notice of appeal. The plaintiff filed his notice of appeal early to avoid losing his appellate rights if defendant Finkelman's abusive temporary restraining order or preliminary injunction filing ban against the plaintiff were granted, and thus prevent him from timely filing a notice of appeal. Did the district court err in concluding that it could not decide such motions because the plaintiff had filed an early notice of appeal to preserve his appellate rights?

## STATEMENT OF THE CASE

A.  **Local Rule 28.1(b) Summary.**

On August 5, 2024, Plaintiff-Appellant Gideon Rapaport filed his Complaint asserting a defamation claim and a false light and invasion of privacy claim against Defendant-Appellee Abigail Finkelman for republishing a forged image on X, formerly known as Twitter, falsely depicting through digital image manipulation techniques a "DO NOT ADMIT" notice containing an image of the plaintiff's face, his full name, and that of his recent employer, Kirkland & Ellis LLP, at the security desk of that firm's New York office. In reality such a notice was never issued nor displayed, and the plaintiff was never barred from those premises.  This republication was specifically targeted to #LawTwitter  by defendant Finkelman, and was viewed over 300,000 times. The district court (Clarke, J.) granted Finkelman's FRCP 12(b)(6) motion to dismiss for all claims with prejudice without any hearing. The plaintiff sought leave to move per Rule 59 to alter or amend the judgment or for relief from the order per Rule 60, but the district court indicated that it would not entertain any such motions. This appeal follows.

B.  **Finkelman Republishes The Defamatory Forged Image Amid A Series Of Offensive And Outrageous Publications**

On or about August 6, 2023, defendant Finkelman republished the first version of the defamatory forged image created using digital image manipulation techniques by

5

the defendants in the related *Rapaport v. Doe 1 et al.* 23-cv-7439 action. She did so through her pseudonymous "Mrs. Detective Pikajew Esq." account, with the handle @clapifyoulikeme.

Defendant Finkelman attributed the receipt of that forged image to an "anonymous tipster". She had solicited the image, which had not been entered into the record of the Doe action from her followers, and republished it as soon as she received it.

On August 7, 2023, defendant Finkelman was subsequently asked by one of her followers "Does your anonymous tipster know what this jack weasel is alleged to have done?" to which she replied with the text emoji "¯\\_(ツ)_/¯", indicated the clearest possible expression of reckless disregard for the truth, and actual malice against the plaintiff. Complaint Exhibit 2 at 37 A.

From then on, defendant Finkelman's became more bizarre, and never actually provided any factual information about the judicial proceedings whatsoever. Instead, defendant Finkelman speculated about things such as whether a Twitter personality referred to as "the menswear guy" would be called as an expert witness *Id.* at 5, compared the plaintiff's diction to that of a fictional villain from the *Final Fantasy* series of Japanese role-playing computer games *Id.* at 21 and referred to him as a "monster" created by "ghouls" *Id.* at 23 A10-32.

6

**C.      Finkelman Blocks From Public View Her X Account After Receiving Service Waiver Form**

After receiving her waiver of service form defendant Finkelman blocked from public view her X, formerly known as Twitter account on or about August 12, 2024. There are some indications that she may have deleted posts relating to this action, since the website provides different error messages when attempting to access the addresses of posts related to the action (which indicate that the material does not exist) and when attempting to access the addresses of posts unrelated to the action (which indicate that the material is protected from public view). Such error message exhibits were entered into the record by the plaintiff A385-386.

When confronted with this in the context of the plaintiff's opposition to a stay of discovery, defendant Finkelman's counsel provided an attorney say-so declaration with no proof that the materials were not deleted, and no explanation. He would later accuse the plaintiff of making such allegations while providing no proof for such concerns, despite the plaintiff's entry of the differing error messages into the record.

**D.      Finkelman Through Counsel Threatens And Actually Brings Sanctions Motion**

Defendant Finkelman threatened the plaintiff with sanctions, actually brought those sanctions on October 21, 2024. She would then move again on October 3, 2025 after the initial motion was vacated by the district court, which despite ruling against

7

the plaintiff, the district did not find or indicate any impropriety or sanctionable conduct on the part of the plaintiff.

**E.    Finkelman Admits Intent To Satirize And Mock The Plaintiff**

In her motion to dismiss and sanctions motion, defendant Finkelman undermined her asserted defense per NY Civil Rights Law § 74 of making a true and fair report by repeatedly asserting that her motivations of satirizing and mocking the plaintiff, as opposed to providing a true and fair report A182.

**F.    District Court Dismisses The Complaint With Prejudice And Collateral Proceedings Ensue**

On August 29, 2025 the district court dismissed the plaintiff's complaint with prejudice, and vacated the outstanding sanctions motions.

On September 3, 2025 the plaintiff filed a declaratory judgment action to declare that defendant Finkelman had no claims per NY CVR 70-a against the plaintiff, since she had threatened to bring such an action against him at the outset of litigation, and repeated "all rights reserved" language in almost any subsequent communication.

On September 5 2025, defendant Finkelman moved for an emergency hearing regarding the declaratory judgment action, and falsely represented that the declaratory judgment action amounted to the reassertion of the dismissed coercive claims initially brought against defendant Finkelman.

On September 10, 2025, an emergency hearing was held regarding defendant

8

Finkelman's request for a filing ban TRO/PI. This request was not granted, and the district court noted that defendant Finkelman failed at every stage of the analysis for such a request. There defendant Finkelman's counsel falsely represented that the "all rights reserved" language was mere "boilerplate", when in fact defendant Finkelman had always intended to bring those claims, and refused to specifically waive them in exchange for a voluntary dismissal of the declaratory judgment action.

Defendant Finkelman claims "At least $144,000" in attorney's fees per the inapplicable and baseless 70-a motion filed. A majority of this amount consists of corrupt attorney make-work relating to sanctionable, baseless and vexatious sanctions motions and other collateral proceedings (such as the absurd emergency filing ban TRO/PI demand).

## **STANDARD OF REVIEW**

This Court "review[s] the grant of a motion to dismiss under Rule 12(b)(6) *de novo*, construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. New York Times*, 940 F.3d 804 (2019) citing

*Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). A plaintiff need only state a claim to relief that is plausible, *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012), an "exceedingly low" burden, *Elias*, 872 F.3d at 111 and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Anderson News*, 680 F.3d at 184-85 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

This Court reviews the denial (or grant) of a motion for sanctions under an abuse of discretion standard "We review all aspects of a District Court's decision to impose sanctions for abuse of discretion." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999) citing *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 154 (2d Cir. 1997) (addressing sanctions under Rule 11, 1927, and inherent power). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 385 at 405; accord *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 92 (2d Cir. 1999) (per curiam).

10

This Court reviews a district court's denial of a motion under Federal Rule of Civil Procedure 59(e) or Rule 60(b) for abuse of discretion. A district court necessarily abuses that discretion when its decision rests on a clearly erroneous assessment of the facts or an error of law, including the failure to recognize "clear error" warranting Rule 59(e) relief or "extraordinary circumstances" justifying Rule 60(b) relief. See *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011); *In re 310 Assocs.*, 346 F.3d 31, 35 (2d Cir. 2003); *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 141 (2d Cir. 2008). Where, as here, the district court denies such relief despite undisputed record evidence establishing manifest errors of law or fact that produce a plainly unjust result, or where the court misapprehends controlling Second Circuit authority or binding state law in a manner that is indisputably wrong, the denial falls outside the bounds of permissible discretion and constitutes reversible clear error. See *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001); *Sussman v. Bank of Israel*, 56 F.3d 450, 456 (2d Cir. 1995).

11

## **ARGUMENT**

### A. The District Court Erred In Concluding That The Forged Image Republished By

### Defendant Finkelman's Was Defamatory

The district court concluded in passing, and without analysis, that the republication of the forged image, reproduced below, which is the sole basis for the defamation claim in this action, was incapable of defamatory meaning as a matter of law.



12

Defendant Finkelman's publication of a digitally manipulated photograph depicting a forged "Do Not Admit" notice posted in the lobby of Plaintiff's former employer's building was clearly defamatory under New York law. This digitally manipulated photograph depicted a "Do Not Admit" notice posted in the New York lobby of Kirkland & Ellis LLP, the plaintiff's former employer's building, and prominently featured the plaintiff's photograph, full name, and the employer's name, purporting to be an official security notice barring Plaintiff from the premises. In fact, no such notice was ever created or displayed.

A publication is defamatory under New York law "if it *tends* to expose the plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977) (emphasis added). Whether a statement is reasonably susceptible of defamatory meaning is a threshold legal question. Such a consideration must be made by a Court from the perspective of the average reasonable reader in full context, which here would include the related defamatory allegations that the plaintiff was fired for sexual harassment, as published and spread by the defendants of the *Rapaport v. Doe 1 et al.* 23-cv-7439 action, and discussed in that action engaged with by defendant Finkelman itself. *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985); *Silsdorf v. Levine*, 59 N.Y.2d 8, 12–13 (1983); *Golub v. Enquirer/Star Group, Inc.*, 89 N.Y.2d 1074, 1076 (1997).

The forged image conveyed the unmistakable false factual assertion that the plaintiff's former employer had officially declared him *persona non grata* and banned him from its premises. "Do Not Admit" or trespass notices are not issued lightly, they are reserved for individuals who have engaged in serious misconduct, typically criminal behavior (e.g., theft, assault, threats) or other conduct posing a genuine security risk. By publishing an image that appeared to be an authentic security poster, defendant Finkelman necessarily implied that Plaintiff had committed ban-worthy acts and that his former employer had formally determined him to be dangerous, dishonest, or unfit. That is defamatory on its face. Defendant Finkelman enthusiastically credited her receipt of the previously taken down forged image to an "anonymous tipster" further bolstering its supposed credibility.

The claim is especially meritorious as defamation *per se*. New York recognizes defamation *per se* (presumed damages) when a statement that tends to injure another in his trade, business, or profession or that imputes the commission of a serious crime. *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992); *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 179 (2d Cir. 2000). The forged image did both.

As an attorney, bar candidate or professional in general, a fabricated notice implying plaintiff was banned for cause directly attacks his professional reputation and fitness which is precisely the type of statement courts have held actionable *per se, November v. Time Inc.*, 13 N.Y.2d 175, 178 (1963) (statement injuring plaintiff in

14

profession is *per se*); *Afftrex, Ltd. v. General Elec. Co.*, 161 A.D.2d 855, 856 (3d Dep't 1990) (implying dishonesty or unfitness in business context is *per se*). Such per se injury may also be caused by the imputation of "any kind of fraud, dishonesty, misconduct, incapacity, unfitness, or want of any necessary qualifications in the exercise [of the profession]" *Four Star Stage Lighting, Inc. v. Merrick*, 56 A.D.2d 767, 768 [1st Dep't 1977]

The visual suggestion that Plaintiff is a trespasser or security threat imputes criminality or moral turpitude, another classic *per se* category. See *Epifani v. Johnson*, 65 A.D.3d 224, 233 (2d Dep't 2009).

New York also recognizes defamation by implication, where a defendant "intends or endorses" a defamatory inference drawn from juxtaposed true and false facts or from fabricated material. *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37–38 (1st Dep't 2014); *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015). Fabricating an ostensibly official document and publishing it without any attached disclaimer that it is fictitious is the functional equivalent of a deliberate alteration that materially changes meaning, also conduct the Supreme Court has held actionable in the analogous context of fabricated quotations *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (deliberate alteration giving false impression is actionable falsity). A reasonable viewer could readily conclude that the employer actually issued the notice, and defendant endorsed

15

that false and damaging inference by crediting it to an "anonymous tipster" without any caveat or qualification after receiving and republishing it.

## B. The District Court Erred In Concluding That Defendant Finkelman's Publications Were Part Of A Fair And True Report

New York Civil Rights Law § 74 provides immunity "for the publication of a fair and true report of any judicial proceeding" while specifically excluding "libel contained in any other matter added by any person concerned in the publication". Defendants bear the burden to prove it applies conclusively and defendant Finkelman fails in every element or criteria established to require such immunity.

## Defendant Finkelman's Tweets/Posts Were Not A Report or Reports of a Judicial Proceeding

Defendant's tweets/posts were not a "report" or "reports" of a judicial proceeding. Asides from republishing the defamatory forged image, they consisted entirely of satirical commentary, ridicule, and original content rather than a report of the *Doe* action. One post featured a digitally manipulated "DO NOT ADMIT" poster that defendant Finkelman herself solicited from an anonymous third party (referred to by her as an "anonymous tipster") and republished. The defendants of the *Doe* action originally created this image and it never appeared in any court filing, docket, or public record of that case though pleadings mentioned it. Soliciting and injecting private, third-party

16

material transforms the publication into commentary, not a "report." *Wenz v. Becker*, 948 F. Supp. 319, 323-324 (S.D.N.Y. 1996). Furthermore, since the posts are distinct from each other by internet address and by the nature of their format, there is no authority to suggest that one may bring immunity to another, or that a series of separate publications can ever become a single report as a matter of law.

Defendant Finkelman has repeatedly admitted that her posts were driven by humor and a desire to ridicule the plaintiff. This explains the lack of any factual grounding, and contradiction of the judicial record for those purposes. No reasonable person would view them as a report even attempting to seriously inform the reader, as is required of a report *Cholowsky v. Civiletti*, 69 AD3d 110. "A report's mere mention of an official proceeding does not automatically extend the privilege to an entire publication; the privilege may apply to some portions of a report and not others ... If context indicates that a challenged portion of a publication focuses exclusively on underlying events, rather than an official proceeding relating to those events, that portion is insufficiently connected to the proceeding to constitute a report of that proceeding." *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209 at 217 (N.D.N.Y. 2014) (citations omitted).

Defendant Finkelman further undermined her case by including examples of actual reports about the *Doe* action, published by AboveTheLaw.com and by David Lat on his Substack blog A128-149. These publications are in fact reports and contained at least at least a basic serving of information as the action, unlike defendant Finkelman's

17

publications. The AboveTheLaw and Lat article were also fair and true (though somewhat critical of the plaintiff) and did not republish the defamatory material that was not in the record.

<u>Defendant Finkelman's Tweets/Posts Were Not Fair and True Even If Taken As A Report Or Reports</u>

Defendant Finkelman's tweets/posts were neither "fair" nor "true" in substance. She republished a fabricated image created by the defendants of the *Doe* action, obtained privately, and placed in a post without clear disclaimer as if it were authentic or officially tied to the proceeding. This added false and unfair implications of serious misconduct. The privilege requires substantial accuracy and forbids material distortions or additions that alter the report's effect on the reasonable person *Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*, 399 N.E.2d 1185 (N.Y. 1979); *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 520-521 (S.D.N.Y. 2013).

The test is whether a reasonable person would reach a different conclusion in relying upon the report compared with considering the actual contents of the proceedings. For example, defendant Finkelman directly contradicted the pleadings in order to satirize and mock the plaintiff, which is not consistent with making a fair and true report by fabricating a quotation "To be clear, I was excited about women's rights getting stripped, but I was way more excited about getting to play with guns." when in fact the materials in the official proceedings stated the opposite "plaintiff was not

18

particularly interested in the Dobbs case" Complaint Exhibit 2 at 6 A10-20. Furthermore, defendant Finkelman's contribution did not provide any factual information about the actual proceedings whatsoever. Instead, defendant Finkelman speculated about things such as whether a Twitter personality referred to as "the menswear guy" would be called as an expert witness *Id.* at 5, compared the plaintiff's diction to that of a fictional villain from the *Final Fantasy* series of Japanese role-playing computer games *Id.* at 21 and referred to him as a "monster" created by "ghouls" *Id.* at 23. Such bizarre and twisted coverage by defendant Finkelman is the precise opposite of that which is "fair and true", and could certainly cause a very different effect on a reasonable person than the truth.

In *Holy Spirit* at 67-68, the New York Court of Appeals specifically conditioned the grant of immunity on the failure of the plaintiff entity to allege the defendant "misquoted" or allege that they gave "greater credence to those documents than was appropriate considering their nature as unverified and unevaluated claims". Here defendant Finkelman both misquoted the plaintiff for the admitted purpose of humiliating him, and gave credence to a forged document by attributing it to an "anonymous tipster".

<u>The Forged Image Was Never Part of Any Judicial or Official Record When Defendant Finkelman Republished It</u>

19

The fabricated image was never part of any official judicial record when republished on August 6, 2023, and would only become part of the *Doe* action almost one year after defendant Finkelman's republication on May 24, 2024. Section 74 protects only reports of material actually contained in or arising directly from the proceeding itself, and the statute explicitly excludes from protection "**any other matter added** by any person concerned in the publication" (emphasis added). The image was originally created by third parties, and only mentioned in the *Doe* pleadings, but was never filed, exhibited, or docketed, and was not publicly available online, when defendant Finkelman republished it thus falling entirely outside the record. Defendant Finkelman's act of soliciting it privately and republishing it added extra-record material Complaint Exhibit 2 at 3 A10-13.

Courts limit the privilege strictly to the proceeding's contents. *Corporate Training Unlimited v. Nat'l Broad. Co.*, 868 F. Supp. 501, 509 (E.D.N.Y. 1994) *Komarov v. Advance Magazine Publishers, Inc.*, 180 Misc. 2d 658, 663 (Sup. Ct. N.Y. Co. 1999). Even predictive opinions or interpretive additions or implications are not protected by this immunity *Friedman v. Bloomberg L.P.*, 884 F.3d 83 (2d Cir. 2018); *Shawe v. Kramer Levin Naftalis & Frankel LLP*, 2018 NY Slip Op 30477(U) (N.Y. Sup. Ct., N.Y. County 2018).

The image constituted "other matter added" explicitly excluded from § 74 protection. Defendant Finkelman's solicitation and republication of a private, third-

20

party-fabricated image—never part of the official proceeding—qualifies as precisely such "added matter." No reported case extends § 74 to immunize a publisher who actively seeks out and inserts non-record, third-party-created defamatory materials, even if referenced in pleadings, as opposed to incidental background information that is not tortious component of the defamation action nor inherently defamatory.

<u>The Forged Image Is Not Background Material But Rather The Defamation At Issue In</u>

<u>The Original Doe Action</u>

The forged image was the tweets' primary defamatory content, not mere "background material." Even incidental background material loses protection when it becomes the publication's focus or contains inherently defamatory material. Here, the fabricated poster dominated the publication's viral reach and is the sole source of the alleged defamatory injury.

The "background material" common law exception was crafted by the New York courts in response to plaintiff's who requested that fair and true reports be subject to a purity test of solely consisting of material in the record, resulting in any added material removing protection no matter how inoffensive or already widely disseminated. "A report's mere mention of an official proceeding does not automatically extend the privilege to an entire publication; the privilege may apply to some portions of a report and not others ... If context indicates that a challenged portion of a publication focuses exclusively on underlying events, rather than an official proceeding relating to those

21

events, that portion is insufficiently connected to the proceeding to constitute a report of that proceeding." *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209 at 217 (N.D.N.Y. 2014) (citations omitted). The district court wrongly relied upon this common law exception to the "added material" exception mentioned in the statute, to immunize the republication of defamation at issue in the original *Doe* action. Such a tack would virtually eliminate republication liability and enable the infinite re-victimization of every defamation plaintiff that attempts to vindicate their rights in court. In *Carroll v. Trump*, No. 1:22-cv-10016 (LAK), 2023 WL 2006312 (S.D.N.Y. Mar. 28, 2023) it was found that the § 74 defense was not available to a defendant because they repeated the defamation that was the subject of the prior action with added commentary and failed to be sufficiently neutral or accurate much like defendant Finkelman here, and thus did not qualify even for "report" let alone "fair and true" status.

## C. The District Court Erred In Finding That New Jersey Law Did Not Appy To The False Light And Invasion of Privacy Claim

The district court failed to correctly conduct conflict of laws analysis, and ignored the critical choice-of-law analysis required in diversity cases as raised by the New Jersey plaintiff's in his assertion of a claim for false light and invasion of privacy under New Jersey law.

Under New York's choice-of-law rules, which govern here per *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487 (1941), the law of the plaintiff's domicile

22

applies to privacy torts such as false light because the domiciliary state has the greatest interest in protecting its resident's personality rights in their local community. *Restatement (Second) of Conflict of Laws* § 153 (1971) on multi-state invasion of privacy: "The local law of the state of the plaintiff's domicil governs" privacy claims); see also *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (applying domicile rule in multi-state defamation cases with analogous interest-analysis).

This precise issue arose in *Catalanello v. Kramer*, 18 F. Supp. 3d 504 (S.D.N.Y. 2014), where the Southern District in applying New York choice-of-law principles held that New Jersey law governed a false light claim brought by a New Jersey-domiciled plaintiff, even though the defamatory publication and other contacts were centered in New York and elsewhere. *Id.* at 518–19 (Engelmayer, J.) (expressly recognizing that "New Jersey courts recognize a cause of action for false-light invasion of privacy" under *Romaine v. Kallinger*, 109 N.J. 282, 294–95 (1988), and applying New Jersey substantive law).

*Romaine* contrasted the global reputational nature of defamation injuries from those of false light invasion of privacy, which involve the plaintiff's privacy and mental tranquility in the context of their local community. False light invasion of privacy is a tort that should clearly be applied per New Jersey law due to New York's adoption of the doctrine of dépeçage and the definitionally local nature of the tort "[T]here is no reason why all issues arising out of a tort claim must be resolved by reference to law of the

23

same jurisdiction" *Babcock v. Jackson*, 191 N.E.2d 279, 12 N.Y.2d 473 (N.Y. 1963) at 484; *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46 (E.D. N.Y. 2000); *Hamilton v. Accu-Tek*, 47 F. Supp. 2d 330 (E.D. N.Y. 1999). Here, it is clear that New Jersey has a very strong interest in protecting the privacy and mental tranquility of a New Jersey resident, while New York has little to no interest in the matter of that inherently local issue as defined by the substantive law.

*Catalanello* was favorably cited by this Circuit in *Kinsey v. New York Times Co.*, 991 F.3d 171 n.21 (2d Cir. 2021). There, the Circuit identified *Catalanello* as a case where false light was properly analyzed under the law of a recognizing jurisdiction (New Jersey) due to the plaintiff's domicile and the local nature of the injury, reinforcing that choice-of-law determinations rather than blanket non-recognition under New York law controls the viability of such claims. *Id.* at 176 & *Kinsey* at n.21.

The district court baselessly lumped together the plaintiff's false light and invasion of privacy claim with his defamation claim, and pretended that the plaintiff somehow conceded the issue, even though he explicitly alleged the former claim under the laws of New Jersey. As to defamation, it is not even clear on the face of the complaint that there is a conflict of law as to that claim between the laws of New Jersey and New York, and so there is no reason for the plaintiff to take a position as to that claim. Even if it is to be assumed *arguendo* that there is a conflict of law as to defamation and that New York law applies to the New Jersey plaintiff's defamation

24

claim, this has no bearing on the false light and invasion of privacy claim because it must be analyzed separately according to the substantive law.

As to defendant Finkelman's representations, she has bizarrely attempted to sanction the New Jersey plaintiff for making the above argument to seek protection from New Jersey law, and repeatedly asserts without authority that the defendant's domicile (as opposed to the plaintiff's) should be the automatic choice of law free of any of New York choice of law analysis.

### D. The District Court Clearly Erred and Abused Its Discretion By Failing To Sanction Defendant Finkelman And Max Rodriguez of Max Rodriguez PLLC For Egregious Abuse Of The Sanctions Process And Collateral Proceedings

The district court abused its discretion by denying the plaintiff's motion for sanctions under its inherent authority, as federal courts possess the power to impose sanctions for conduct that abuses the judicial process, including the weaponization of frivolous sanctions motions. In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), the Supreme Court affirmed that "[i]t is firmly established that '[t]he power to punish for contempts is inherent in all courts,'" and this extends to sanctioning bad-faith actions that degrade the judicial system, even where other rules like FRCP 11 might potentially apply but be ineffective. Here, Defendant Finkelman and her counsel's repeated frivolous sanctions threats and collateral proceedings constitute such abuse, harassing the pro se plaintiff and wasting judicial resources. The denial overlooks this authority, failing to deter cynical tactics that undermine the process, as this Circuit has emphasized

25

that inherent powers allow sanctions for bad-faith filings regardless of whether they misled the court, per *ITM Associates LLC v. Verint Systems Inc.*, No. 19-1031 (2d Cir. Mar. 16, 2021).

The abusive conduct further warrants sanctions under 28 U.S.C. § 1927, which targets attorneys who "multiplies the proceedings in any case unreasonably and vexatiously," allowing courts to require them to pay excess costs and fees incurred thereby. In *Ransmeier v. Mariani*, 718 F.3d 64 (2d Cir. 2013), the Second Circuit upheld sanctions against a law firm for misrepresentations and frivolous actions, noting that § 1927 applies to entities and individuals whose conduct vexatiously prolongs litigation. Defendant Finkelman and Mr. Rodriguez's pattern of harassing motions exemplifies this, transforming threats into repeated bringing of meritless collateral issues, including on an emergency posture, that burden the plaintiff and court without merit. By denying relief, the district court erred, as this standard demands intervention against bad-faith multiplication, especially where it targets a pro se litigant vulnerable to such tactics, aligning with the statute's purpose to protect judicial integrity.

Moreover, the denial constitutes an abuse of discretion by failing to safeguard the pro se plaintiff from ongoing vexatious harassment, perpetuating an imbalance that erodes access to justice. As the Supreme Court cautioned in Chambers, courts must exercise discretion in "fashioning an appropriate sanction" for abusive conduct, ranging from fees to other remedies to deter repetition. The Second Circuit in *In re Markus*, 78

26

F.4th 554 (2d Cir. 2023), reinforced that inherent authority includes compensating injured parties and coercing compliance, underscoring the error in allowing unchecked abuse. Thus, the district court's refusal misapplied these principles, prioritizing tolerance of bad-faith harassment over its duty to maintain orderly proceedings and protect vulnerable parties, demanding reversal to uphold substantive fairness.

Defendant Finkelman's abuses began in repeated motions for sanctions that bizarrely attempt to sanction the plaintiff for bringing an action against defendant Finkelman by her legal name (as opposed to her alias "Mrs. Detective Pikajew Esq."), mentioning that she is an attorney or fragmentary quotations of a settlement and damages mitigation conversation held between the plaintiff's former counsel and defendant Finkelman's counsel as supposed proof of ill intent by the plaintiff (defendant Finkelman also attempts to sanction the plaintiff for seeking a record of that conversation to defend himself). In seeking sanctions, defendant Finkelman also made patently frivolous representations as to the law such as side-stepping all New York conflict of laws analysis to pretend that only the domicile of a defendant must necessarily provide the law for all claims, and despite the endorsement of the plaintiff's position as to conflict of law in *Catalanello* and *Kinsey*.

With this conduct left unchecked, the abuse further grew to encompass an emergency hearing demanded by defendant Finkelman, regarding the plaintiff's declaratory judgment action which sought a declaration that she did not have claims

27

against the plaintiff per New York Civil Rights Law 70-a, as she had threatened in duplicate to bring. Defendant Finkelman failed to satisfy even a single criteria required for a filing ban or a TRO/PI in general as the district noted, or even to explain what "emergency" was caused by the filing of a declaratory judgment action that had not even been served.

At that September 10, 2025 hearing, defendant Finkelman's counsel directly prevaricated to the district by indicating that repeated threatening "reserves all rights with respect to you" language to the plaintiff after the initial threat to bring a retaliatory CVR § 70-a action was mere "boilerplate", and did not relate to those or other claims. Subsequent to that hearing, defendant Finkelman twice again attempted to defraud the district firstly by representing that the plaintiff intended to move per Rule 59 or 60 on the basis of issues he discussed at the hearing and already raised, when in fact the plaintiff did not discuss anything related to those motions at all, and secondly by falsely accusing the plaintiff of violating a district court order, which the district correctly rejected as false.

In attempting to avoid unnecessary litigation, the plaintiff offered to voluntarily dismiss the declaratory judgment action in exchange for a specific waiver of the encompassed claims, but was repeatedly rejected and instead offered a statement that defendant Finkelman did not currently intend to bring such claims, but would reserve the right to do so. Bizarrely, amidst the threat of a filing ban, defendant Finkelman's counsel

28

also demanded that the plaintiff seek his leave to file any motion or his notice of appeal, because he had determined *ex ante* that the plaintiff had no "colorable basis" for any potential motion in the future.

Apparently this weaponization of the sanctions process and collateral proceedings is not only meant to harass and vex the plaintiff, but also to corruptly make-work for defendant Finkelman's apparently mostly unemployed counsel, Mr. Max Rodriguez of Max Rodriguez PLLC and inflate billings. A majority of the "At least $144,000" inapplicably and meritlessly demanded per CVR § 70-a in attorney's fees (initially concealed and only tardily disclosed in reply rather than contemporaneously with the motion as required) relates to these collateral actions that are themselves sanctionable, meritless and clearly incapable of success.

### E. The District Court Clearly Erred and Abused Its Discretion By Refusing to Entertain Any FRCP 59 or FRCP 60 Motions

The district court clearly erred in concluding that it lacked jurisdiction to consider the plaintiff's motions under FRCP 59 and 60 solely because a notice of appeal had been filed. Under the Federal Rules of Appellate Procedure (FRAP) 4(a)(4), a timely motion under Rule 59 to alter or amend the judgment, or a Rule 60 motion filed within 28 days of judgment entry, suspends the effectiveness of a previously filed notice of appeal. The notice becomes effective only after the district court disposes of the motion, allowing the lower court to retain jurisdiction to rule on these post-judgment matters without a

29

remand from the appellate court. As the Supreme Court explained in *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." However, this divestiture is not absolute for tolling motions, as FRAP 4 emphasizes integration of post-judgment motions with appeal timing to prevent premature jurisdictional bars. In this Circuit, this framework is routinely applied to ensure efficiency, as seen in precedents like those affirming district courts' power to address such motions even after docketing, underscoring that the mere filing of a notice does not categorically preclude consideration.

The plaintiff's early filing of the notice of appeal, motivated by a legitimate concern over potential abusive restraints like a temporary restraining order or preliminary injunction that could bar timely filing a notice of appeal, further supports the error in the district court's stance. FRAP 4(a)(2) explicitly validates premature notices of appeal, treating them as filed on the date of judgment entry or the resolution of tolling motions, thereby preserving appellate rights without forfeiting district court jurisdiction over qualifying post-judgment relief. In *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.*, 498 U.S. 269, 276 (1991), the Supreme Court held that FRAP 4(a)(2) "permits a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment" in appropriate circumstances, emphasizing that "the Rule recognizes that,

30

unlike an excepted interlocutory appeal, a premature notice of appeal does not waste our time or our resources." This rule protects parties from procedural traps, as highlighted in the committee notes to the 1993 amendments to FRAP 4, which aimed to resolve uncertainties in appeal timing and avoid forfeitures due to early filings. By refusing to entertain the motions on jurisdictional grounds, the district court overlooked this protective intent, especially where the plaintiff's preemptive action was a reasonable response to the defendant's tactics, aligning with the rules' emphasis on fairness and access to relief.

Moreover, even if the appeal were docketed at the Circuit, circuit practice permits district courts to entertain and deny Rule 60 motions without remand, as a pragmatic exception to general divestiture, per cases like *Toliver v. County of Sullivan*, 957 F.2d 47 (2d Cir. 1992). In *Toliver*, the Second Circuit explained that "a district court may entertain and deny the rule 60(b) motion; however, if it decides to grant the motion, the court should obtain the leave of the court of appeals to do so" allowing for efficient resolution without unnecessary remands. For motions inclined to be granted, the district court can signal its intent, enabling a FRAP 12.1 remand. The committee notes to Rule 60 reinforce this flexibility, allowing corrections or relief post-docketing with appellate leave if needed, while Rule 59's notes affirm the district court's broad authority to amend judgments on meritorious grounds. Thus, the district court's blanket refusal misapplied these principles, erroneously prioritizing the notice's filing over the rules' integrated

31

structure designed to accommodate such scenarios and ensure substantive justice.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff-Appellant respectfully requests that the Court reverse the district court's judgment dismissing his defamation and false light and invasion of privacy claims against Defendant-Appellee, remand this case with instructions to the district court that the parties proceed to discovery.


Respectfully submitted,


/s/ Gideon Rapaport

Gideon Rapaport, *pro se*
#627 1078 Summit Avenue
Jersey City, NJ 07307
GideonRapaportLaw@Outlook.com
(862)-213-0895

32