# No. 25-2247

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

GIDEON RAPAPORT, an individual,

*Plaintiff-Appellant,*

—against—

ABIGAIL FINKELMAN, an individual,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK

Case No. 1:24-cv-05439-JGLC, Hon. Jessica G. L. Clarke

---

### SPECIAL APPENDIX OF PLAINTIFF-APPELLANT

---

GIDEON RAPAPORT, *pro se*
#627 1078 Summit Avenue
Jersey City, New Jersey 07307
Telephone: (862) 213-0895

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GIDEON RAPAPORT,

                                    Plaintiff,

          -against-

ABIGAIL FINKELMAN,

                                    Defendant.

---

24-CV-5942 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Gideon Rapaport, who is now proceeding *pro se*, is a former summer associate of the law firm of Kirkland & Ellis LLP, and a graduate of New York University School of Law. Plaintiff filed this action on August 5, 2024, asserting that Defendant Abigail Finkelman (a New York-based lawyer) defamed him by publishing a series of tweets regarding Plaintiff's complaint in a separate lawsuit in the Southern District of New York bearing case number 23-CV-6709 ("*Rapaport I*"). The *Rapaport I* complaint generally alleged that unnamed John Does—who were later identified to be New York University law students Ajay Srinivasan Iyer and Zachary George Garrett—conspired to post defamatory statements and photographs of Plaintiff in order to ruin his reputation. Defendant's tweets provided mostly sarcastic and mocking commentary regarding the allegations in the *Rapaport I* complaint, such as her suggestion that "all of #lawtwitter" read Plaintiff's complaint in *Rapaport I*, and her "promise" they would "not regret it." Defendant also tweeted one of the alleged defamatory photographs at issue in *Rapaport I* that she received from an "anonymous tipster."

Although the Complaint criticizes Defendant's twitter thread as "negative" and "obsessive and intensely personal commentary," Plaintiff has clarified that he now only challenges the posting of the allegedly defamatory, and fake, photograph. However, Defendant is

-1-

immune from liability under New York Civil Rights Law § 74's fair report privilege. And in any event, her tweets amount to nothing more than non-actionable opinions or, at most, statements which can be verified as true. For these reasons and those stated below, the Court grants Defendant's motion to dismiss and although not requested, denies Plaintiff leave to amend.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the operative complaint and presumed to be true for the purposes of this Order. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

Plaintiff is a graduate of the New York University School of Law ("NYU Law") and a citizen of Canada. ECF No. 1 ("Complaint" or "Compl.") ¶ 1. Abigail Finkelman is a member of the New York State Bar, a graduate of the Yeshiva University Cardozo School of Law, and a practicing attorney at the Legal Aid Society in New York. *Id.* ¶ 2. On July 28, 2023, Plaintiff filed a *pro se* complaint to commence *Rapaport I*.[1]

Beginning on August 6, 2023, Finkelman published a series of tweets from her account, "@clapifyoulikeme" (using the name "Mrs. Detective Pikajew, Esq."), regarding the *Rapaport I* complaint. Defendant's twitter thread generally involved screenshotting portions of the *Rapaport I* complaint, and providing reactions or commentary with respect to that snapshot. *See generally* ECF No. 1-2. For instance, the thread began with the statement "I need all of #lawtwitter to read this complaint. I promise you will not regret it." ECF No. 1-2 at 2. The *Rapaport I* complaint

---

[1] The Court may take judicial notice of other judicial proceedings and filings, and does so here merely to discuss the fact of those filings, and does not suppose the truth of any assertions contained therein. *See, e.g., Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

2

alleged, among other things, that unnamed individuals forged a document styled as a "wanted" or "public enemy" poster, and included a corporate headshot style photograph of Plaintiff at the top, which they then posted on Reddit.com and Top-Law-Schools.com. *Rapaport I*, ECF No. 1 ("R1 Compl.") ¶¶ 6–9.

In relation to this allegation, Finkelman tweeted "[Shaking my head] why wouldn't you include screenshots, I wanna see the fake 'wanted' or 'public enemy' poster." ECF No. 1-2 at 3. Finkelman continued to highlight and comment on other parts of the complaint in an apparent sarcastic and mocking tone. *See generally* ECF No. 1-2. Then, in the last tweet from the August 6, 2023 chain, Finkelman tweeted a copy of the fake photograph purportedly described in the complaint, writing "[w]e got it lads, [shoutout] to an anonymous tipster." [2] ECF No. 1-2 at 20. The image reflects a picture of Plaintiff's face and the following text:

> DO NOT ADMIT
> GIDEON RAPAPORT
> KIRKLAND AND ELLIS

*Id.* In the Complaint, Plaintiff alleges (as he alleged in the *Rapaport I* complaint) that the photograph is fake, and that even though the photo was taken down from other websites, it remained publicly available due to Finkelman's tweet. Compl. ¶ 19. Plaintiff alleges that the photograph, "taken together with the context in which it appears, is susceptible to a defamatory connotation" because it "falsely accuses plaintiff . . . of being a trespasser" and implies "he is unfit to practice his profession." *Id.* ¶ 20.

Plaintiff commenced this action on August 5, 2024. ECF No. 1. On October 21, 2024, Defendant filed the instant motion to dismiss. ECF Nos. 17, 19 ("Mem."). After the motion was

---

[2] Rapaport attached a nearly identical photograph to his amended complaint in *Rapaport I*. *See Rapaport I*, ECF No. 38-2.

fully briefed, the parties filed supplemental authority letters in April 2025 related to Defendant's arguments based on New York Civil Rights Law § 74 ("Section 74"). ECF Nos. 50, 51.

Defendant also filed a motion for sanctions against Plaintiff along with the motion to dismiss. ECF No. 20. Plaintiff filed his own sanctions motion as well. ECF No. 24. The Court stayed further briefing on the sanctions motions pending resolution of the motion to dismiss. ECF No. 30. The Court also, upon motion by Defendant, stayed discovery pending disposition of the motion to dismiss. ECF No. 45.

<b>LEGAL STANDARD</b>

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

4

*Pro se*[3] complaints "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citation omitted). "Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (internal citation omitted); *see also Boykin v. KeyCorp.*, 521 F.3d 202, 216 (2d Cir. 2008) ("[D]ismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Because Plaintiff is proceeding *pro se*, the Court must liberally construe his Complaint and interpret it "to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal citation omitted).

## DISCUSSION

The Court first concludes, following the reasoning from the MTD opinion in *Rapaport I*, that New York law applies, and Plaintiff's claim for false light and invasion of privacy is therefore dismissed. The Court then finds that the Complaint does not plausibly state a claim for defamation because New York Civil Rights Law § 74 immunizes Defendant's tweets, and that in any event Defendant's tweets are non-actionable opinion statements that cannot support a defamation claim.

### I.     New York Law Applies and Plaintiff's False Light and Invasion of Privacy Claim Is Dismissed

Plaintiff invokes New Jersey law in this case with respect to his false light and invasion of privacy claim. Compl. ¶¶ 34–41. For the reasons discussed at length in the Court's MTD Order in *Rapaport I*, New York's choice of law dictates that this state's substantive law governs.

---

[3] While Plaintiff filed the complaint with the assistance of counsel, he has proceeded *pro se* in opposing the Defendant's motions to dismiss. Accordingly, the Court finds it appropriate to apply this more lenient standard.

*Rapaport v. Iyer*, No. 23-CV-6709 (JGLC), 2025 WL 966275, at *4–6 (S.D.N.Y. Mar. 31, 2025).

Nothing in the present case compels a contrary result from the Court's ruling in *Rapaport I*. New York courts "weigh all the factors that might impact on the interests of various states in the litigation . . . including where the plaintiff suffered the greatest injury; where the statements emanated and were broadcast; where the activities to which the allegedly defamatory statements refer took place; and the policy interests of the states whose law might apply." *Kinsey v. New York Times Co.*, 991 F.3d 171, 177 (2d Cir. 2021) (cleaned up). Like in *Rapaport I*, Defendant is based in New York, the activities discussed in the *Rapaport I* complaint (and the instant complaint) all occurred in New York, and the main damage complained of—alleged harm to Plaintiff's reputation—is felt most strongly in New York where he went to law school and where he would seek to practice law. Compl. ¶ 7.

Accordingly, Plaintiff's claim for false light and invasion of privacy is dismissed with prejudice because New York law does not recognize this cause of action. *See Iyer*, 2025 WL 966275, at *4–6. The Court also declines to invoke the doctrine of dépeçage for substantially similar reasons as those set forth in the *Rapaport I* MTD opinion. *See id.* at *5–6.

## II.    Plaintiff Fails to State a Claim for Defamation

While Plaintiff discusses Finkelman's entire chain of tweets and attaches the same as an exhibit, he appears to only assert one "defamatory" statement: Finkelman's posting of the allegedly faked photograph. Compl. ¶¶ 6, 27–33. Indeed, Plaintiff asserts the "gravamen of this action" is Finkelman's "willful and malicious posting" of the defamatory photograph. *Id.* ¶ 6; *see also* Opp. at 4 ("[T]he only stated cause of action for defamation in this matter is [Defendant's] republication of the first version of the defamatory image . . . ."). And Plaintiff concedes that Finkelman's other tweeted comments "were within her First Amendment rights, despite their

6

-6-

critical nature." Compl. ¶ 13. The Court therefore understands Plaintiff to only be asserting that the tweeted photograph is defamatory.[4]

### A. Applicable Standard

"Defamation is the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of plaintiff in the minds of right-thinking persons, and to deprive plaintiff of their friendly intercourse in society." *3P-733, LLC v. Tawan Davis*, 135 N.Y.S.3d 27, 29–30 (1st Dep't 2020) (cleaned up). "There are two categories of defamation under New York law: libel, for written statements, and slander, for spoken statements." *Carroll v. Trump*, 650 F. Supp. 3d 213, 225 (S.D.N.Y. 2023). The Complaint does not specify whether the alleged defamation is libel or slander, but given Plaintiff's allegations arise from Finkelman's written tweets, the Court understands that Plaintiff intended to assert a libel *per se* claim with respect to these statements.

Under New York law, a claim for libel requires a plaintiff to allege (1) a written defamatory statement of fact concerning the plaintiff, (2) publication to a third-party, (3) the applicable level of fault, (4) falsity, and (5) special damages or a showing of libel *per se*. *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). A plaintiff can make a showing of libel *per se* if "it tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or to induce an evil opinion of him in the minds of right-thinking persons." *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977); *see also Nolan v. State,* 69 N.Y.S.3d

---

[4] Even if the Court were to consider Defendant's other tweets, they would not support a claim for defamation. Finkelman's remaining tweets are personal opinions, albeit mocking and sarcastic in nature. *See generally* ECF No. 1-2. While Plaintiff views the tweets as harsh or bullying, the fact remains that "[e]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, [they] cannot be the subject of an action for defamation." *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008).

277, 284 (1st Dep't 2018) ("A defamation plaintiff must plead special damages unless the defamation falls into any one of four *per se* categories: (1) statements charging the plaintiff with a serious crime; (2) statements that tend to injure the plaintiff in her trade, business or profession; (3) statements that impute to the plaintiff a 'loathsome disease'; and (4) statements that impute unchastity to a woman.").

In addition, New York has enacted what is commonly referred to as an "Anti-SLAPP" (Strategic Lawsuit Against Public Participation) statute. N.Y. CIV. RTS. L. § 76-a (McKinney 2025). The New York Anti-SLAPP statute dictates that for any communication in a place open to the public or public forum in connection with an issue of public interest, a plaintiff must make a showing by "clear and convincing evidence" that the alleged tortfeasor acted with actual malice—i.e., "with knowledge of [the statement's] falsity or with reckless disregard of whether it was false . . . ." *Id.* § 76-a(1). The statute defines "public interest" broadly to include "any subject other than a purely private matter." *Id.* § 76-a(d).

Plaintiff alleges that Finkelman's tweeting of the photograph is defamatory *per se* because it "accuses [him] of conduct incompatible with being an honorable member of the legal profession." Compl. ¶ 29. Defendant seeks to dismiss the defamation claim arguing: (1) that New York Civil Rights Law § 74, provides immunity for statements which are fair and true reports of a judicial proceeding; (2) that the statements are otherwise non-actionable opinions; and (3) in the alternative, the statements are true, and were not made with "actual malice" as required by the Anti-SLAPP statute. The Court considers these issues below.

### B. New York Civil Rights Law Section 74 Immunizes Defendant from Liability for the Tweeted Photograph

Defendant first contends that New York Civil Rights Law § 74—which provides immunity for fair and true reports of judicial proceedings—requires dismissal of Plaintiff's

8

-8-

defamation claim. Mem. at 8–10. Plaintiff appears to agree that, had the photograph been attached to the original *Rapaport I* complaint, Defendant could have tweeted it without exposing herself to liability. Opp. at 6. However, because Defendant allegedly "sought out the image for her malicious reasons," Plaintiff argues the immunity does not apply. *Id.* The Court disagrees and extends the fair report privilege to Finkelman's tweeting of the allegedly fake photograph because it is substantively described by the *Rapaport I* complaint.

Section 74 of the New York Civil Rights Law was enacted, at least in part, to "encourage accountability through public legal proceedings and the truthful reporting of whatever transpires in open court." *Gannett Co. v. De Pasquale*, 43 N.Y.2d 370, 378 (1977). It provides:

> A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.
>
> This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof.

N.Y. CIV. RTS. L. § 74 (McKinney 2025). Section 74 also extends to "background material with regard to the case" as long as the statement "is a substantially accurate description of the allegation." *Fishof v. Abady*, 720 N.Y.S.2d 505, 506 (1st Dep't 2001). "A key test courts have adopted to resolve whether a report qualifies for the fair report privilege is whether the ordinary viewer or reader can determine from the publication itself that the publication is reporting on a judicial proceeding." *Kinsey v. New York Times Co.*, 991 F.3d 171, 178–79 (2d Cir. 2021) (internal citation and quotation marks omitted). Thus, the question is whether the tweeted photograph—which is merely described in the complaint and was not originally attached to it— indicates to an ordinary viewer that it relates to, or reports on, a judicial proceeding.

The relevant tweet shares a photograph described in detail by the *Rapaport I* complaint, accompanied by Defendant's statement "[w]e got it lads, [shoutout] to an anonymous tipster." ECF No. 1-2 at 20. Even though the photograph was not attached to the original *Rapaport I* complaint, it was *substantively described* in the *Rapaport I* complaint. R1 Compl. ¶¶ 7–8. By saying we got "it," and replying to her earlier tweet regarding the allegations in the *Rapaport I* complaint (which described the photograph as fake), Finkelman conveyed the message that the same fake photograph described in the complaint is the same one she received and was tweeting. Moreover, while Defendant asserted that she received the photograph from an "anonymous tipster," that fact itself does not prevent application of Section 74. "[T]he fact that a defendant derive[s] information about the judicial proceedings from secondary sources [does] not mean that [Section 74 is] inapplicable." *Cholowsky v. Civiletti*, 887 N.Y.S.2d 592, 596 (2d Dep't 2009).

Defendant did not provide comments or information that was different than, or separate from, the underlying allegations in the *Rapaport I* complaint. Finkelman did not, for instance, offer commentary about the visual authenticity of the photo, or give an opinion on whether, based on the photograph, Plaintiff's allegations had merit. *Cf. Holy Spirit Assn. for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 67–68 (1979) (extending Section 74 immunity to newspaper articles summarizing House Subcommittee intelligence reports because "neither [of the articles] assigned to the intelligence reports allegations not contained in those documents, nor added, by virtue of word usage or otherwise, greater credence to those documents than was appropriate."). Indeed, in her initial tweet expressing an interest in seeing the photograph, Defendant herself described the "screenshot" as "fake," further indicating she was merely summarizing and discussing the Complaint's allegations (which referenced

10

-10-

photographs being uploaded to websites), not making any separate claims about the truth or falsity of those allegations. ECF No. 1-2 at 3.

The Court thus finds that the tweeted photograph—even though it was not attached to the original *Rapaport I* complaint—would enable an ordinary viewer or reader to determine "from the publication itself that the publication is reporting on a judicial proceeding." *Kinsey*, 991 F.3d at 178 (cleaned up). Defendant's tweet in the entire context of the thread presents a clear relation to the relevant paragraphs from *Rapaport I* complaint: that allegedly, three John Does posted faked photographs of Plaintiff on the internet, and the photographs showed a "public enemy" styled poster with a picture of him and the words "DO NOT ADMIT." R1 Compl. ¶¶ 7, 8; *see Kinsey*, 991 F.3d at 178 (observing that a statement is covered by Section 74 if it does not produce a different effect on a reader than would a report containing the precise truth). The tweet therefore qualifies for Section 74 immunity, because it is only "if the context in which the statements are made *make it impossible* for the ordinary viewer, listener, or reader to determine whether the defendant was reporting on a judicial proceeding" that the absolute privilege under Section 74 does not apply. *Civiletti*, 887 N.Y.S.2d at 596 (emphasis added) (cleaned up); *see also id.* (stating there is no requirement that a publication report the plaintiff's side of the controversy for the fair report privilege to apply).

### C. Plaintiff Fails to Plead a Defamatory Statement

Even if the Court found the Section 74 privilege to be inapplicable, Plaintiff's defamation claim would still fail because (1) the Defendant's tweet of the photograph does not constitute an actionable statement of fact based on the context in which it was made; and (2) the tweeted photograph would be protected by a defense of truth. The Court addresses these issues in turn.

11

-11-

Plaintiff alleges that Defendant's tweet of the photograph, taken "together with the context in which it appears, is susceptible to a defamatory connotation" because it "falsely accuses plaintiff . . . of being a trespasser" and implies "he is unfit to practice his profession." Compl. ¶ 20. In evaluating the viability of a defamation claim, the words must be construed in the context of the entire statement before an ordinary audience, and if the statement is not reasonably susceptible to a defamatory meaning, the claim is not actionable. *Silsdorf v. Levine*, 59 N.Y.2d 8, 13 (1983), *cert. denied*, 464 U.S. 831 (1983). Allegedly defamatory statements must not "be read in isolation, but must be perused as the average reader would against the 'whole apparent scope and intent of the writing.'" *Kesner v. Dow Jones & Company, Inc.*, 515 F. Supp. 3d 149, 170 (S.D.N.Y. 2021) (quoting *Celle v. Filipino Rep. Enter. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000)).

Based on the full surrounding context, an ordinary reader would not view Finkelman's tweet as suggesting Plaintiff is a "trespasser" or that he is "unfit to practice his profession" as an attorney. Compl. ¶ 20. The alleged defamatory tweet containing the photograph came at the end of an entire thread devoted to the *Rapaport I* complaint, which itself alleged that the photograph was falsified. ECF No. 1-2 at 20; R1 Compl. ¶¶ 6–9. And the thread involved Defendant screenshotting, and adding commentary regarding, the *Rapaport I* complaint. It would have therefore been clear, to an ordinary reader, that Defendant derived both the subject and source of the content in the Twitter thread from the *Rapaport I* complaint. Indeed, the vast majority of Plaintiff's tweets included screenshots of that complaint. *See generally* ECF No. 1-2.

Defendant is not alleged to have any personal knowledge or familiarity with any of the material discussed in the *Rapaport I* complaint, or any prior (or current) relationship with Plaintiff. Further, Defendant did not at any point suggest that Plaintiff's allegations with respect

12

-12-

to the photograph lacked merit or were untrue. In other words, Finkelman did not write or suggest anything that would cause an ordinary reader to have a different opinion than one they would have if they merely read the *Rapaport I* complaint (which Finkelman screenshotted throughout the thread). It is therefore only susceptible to "one meaning." *Pantheon Properties, Inc. v. Houston*, No. 20-CV-3241 (ALC), 2021 WL 4523619, at *4 (S.D.N.Y. Sept. 30, 2021) (finding statement at issue was not susceptible of defamatory meaning); *Ava v. NYP Holdings, Inc.*, 885 N.Y.S.2d 247, 252 (1st Dep't 2009) (cleaned up) (dismissing defamation claim where alleged defamatory words in article were "not reasonably susceptible of a defamatory connotation.").

Even construing the remaining tweets in the most charitable light to Plaintiff (which, as discussed *supra*, Plaintiff concedes do not support his defamation claim), Finkelman, at most, called Plaintiff's lawyering ability into question by mocking various allegations in the complaint. ECF No. 1-2. But these are the types of non-actionable opinion statements which courts have long recognized cannot sustain a defamation claim. *See Mann v. Abel*, 10 N.Y.3d 271, 276 (2008) (concluding that an opinion, no matter how offensive, cannot support a defamation claim).

The tweeted photograph would also not support a claim of defamation because the "truth" defense would apply. "Truth is an absolute defense to an action based on defamation." *Goldberg v. Levine*, 949 N.Y.S.2d 692, 693 (2d Dep't 2012) (internal citation omitted); *see also Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986). "New York courts hold that a statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) (cleaned up).

Consistent with the above analysis regarding Section 74, the tweeted photograph, in full context, would not produce a different effect on the reader than the *Rapaport I* complaint itself. In the first relevant tweet, Defendant described the photograph as "fake." ECF No. 1-2 at 3. The "truth"—as Plaintiff essentially concedes—is that the photograph is not real. That is exactly how Defendant described it. And Plaintiff himself discusses and characterizes Defendant's tweeted photograph as the same faked photograph described in *Rapaport I* that was posted on Reddit and Top-Law-Schools.com. Compl. ¶¶ 6–16. Plaintiff also attached a nearly identical photograph to his amended complaint in *Rapaport I*. *See Rapaport I*, ECF No. 38-2.

Plaintiff's claim for defamation is therefore dismissed.[5]

## III.    Plaintiff Is *Sua Sponte* Denied Leave to Amend

Plaintiff will not be permitted leave to amend his complaint, because any such amendment would be futile. To be sure, "[l]eave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [he] has a valid claim." *Atherley v. N.Y.C. Dep't of Educ.*, No. 23-CV-383 (JGLC), 2024 WL 1345741, at *13 (S.D.N.Y. Mar. 29, 2024) (internal citation omitted). The Second Circuit interprets Rule 15 of the Federal Rules of Civil Procedure liberally "consistent with [its] strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks and citation omitted); *see also Foman v.*

---

[5] The Court also notes that even if Plaintiff's defamation claim succeeded, he would likely not be entitled to the declaratory or injunctive relief he seeks. "Indeed, for almost a century the Second Circuit has subscribed to the majority view that, absent extraordinary circumstances, injunctions should not ordinarily issue in defamation cases." *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001); *see also Ferri v. Berkowitz*, 561 F. App'x 64, 65 (2d Cir. 2014) ("Constitutional concerns and long tradition make courts often wary of enjoining defamation."). The Court does not find, and Plaintiff has not alleged, the existence of any "extraordinary circumstances" which would make equitable relief appropriate.

*Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). "[A] *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (cleaned up).

However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 200 (2d Cir. 2007). Here, any amendment would be futile because no additional allegations from Plaintiff would alter the factual circumstances in which Defendant tweeted the photograph. Those circumstances support, among other things, the application of Section 74, which fully immunizes Plaintiff from liability.

Moreover, Plaintiff has "neither sought leave to amend nor suggested that he possesses any additional facts that could cure the defects in his dismissed claims." *Whitfield v. City of New York*, 760 F. Supp. 3d 126, 145 (S.D.N.Y. 2024), *reconsideration denied*, No. 20-CV-4674 (JMF), 2025 WL 327312 (S.D.N.Y. Jan. 29, 2025), *appeal dismissed*, No. 25-245, 2025 WL 2238018 (2d Cir. June 2, 2025). Ultimately, "it is within the sound discretion of the district court to grant or deny leave to amend," *McCarthy*, 482 F.3d at 200, and given the substantive defects with Plaintiff's claims, amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011) (affirming district court's dismissal of claim without leave to amend where amendment would have been futile); *Bright Kids NYC Inc. v. Kelly*, No. 19-CV-1175 (JMF), 2020 WL 6891814, at *6 (S.D.N.Y. Nov. 24, 2020) (dismissing complaint where, among other

15

-15-

things, parties did not request leave to amend or otherwise suggest they possessed facts that would cure deficiencies).

**CONCLUSION**

For the reasons stated above, the Court GRANTS Defendant Finkelman's motion to dismiss in its entirety. In addition, the stay which the Court previously imposed on the sanctions briefing is LIFTED, and the previously filed sanctions motions (ECF Nos. 20 and 24) are DENIED as MOOT. To the extent Defendant seeks to renew this motion, she must file any such motion, if desired, by **September 15, 2025**.

The Clerk of Court is respectfully directed to terminate ECF Nos. 17, 20, and 24.

Dated:  August 29, 2025
New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge