# 25-2247

IN THE

# United States Court of Appeals
## for the Second Circuit

---

GIDEON RAPAPORT,

*Plaintiff-Appellant,*

– v. –

ABIGAIL FINKELMAN,
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Southern District of New York
Case No. 1:24-cv-05942 (JGLC)

---

## BRIEF FOR APPELLEE ABIGAIL FINKELMAN

---

Max Rodriguez
LAW OFFICE OF MAX RODRIGUEZ PLLC
575 5th Avenue, 14th Floor
New York, NY 10017
(646) 741-5167
max@maxrodriguez.law

*Counsel for the Defendant-Appellee,
Abigail Finkelman*

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................................1

COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW ..................1

COUNTERSTATEMENT OF THE CASE ...........................................2

    I.    Factual Allegations ........................................................ 2

    II.   Relevant Procedural History .................................................... 6

        A.   Rapaport files this case, which is dismissed for
failure to state a claim ..................................................................6

        B.   Rapaport files a duplicative lawsuit against Finkelman in response
to the dismissal of his claims, and the District Court stays that
duplicative lawsuit and imposes a pre-motion letter requirement on
Rapaport as an exception to the District Court's customary
individual practices ..................................................................9

        C.   Finkelman proceeds in filing her renewed motion for sanctions and
alternative motion for attorney's fees and costs under New York's
Anti-SLAPP law ..................................................................11

    III.  Relevant Decision Below ....................................................12

SUMMARY OF THE ARGUMENT ....................................................17

STANDARD OF REVIEW ..................................................................20

ARGUMENT ..................................................................................20

    I.    The District Court's grant of the motion to dismiss with prejudice
should be affirmed ..................................................................20

        A.   Rapaport failed to state a claim for defamation against Finkelman .....21

           1.   Finkelman is immune from Rapaport's claims under
New York Civil Rights Law § 74.............................................22

           2.   Finkelman's statements were non-actionable opinions............30

           3.   Even if actionable, Finkelman's statements were true .............34

           4.   Even if actionable, and even if false, Rapaport still
failed to state a claim against Finkelman because he did

not and cannot make any allegations plausibly
demonstrating Finkelman made the statements with
actual malice ................................................................................... 36

    B.  Rapaport failed to state a claim for false light and invasion of
privacy ............................................................................................... 38

        1.  New York law applies and New York does not
recognize a tort for false light or invasion of privacy .............. 38

        2.  Even if New Jersey law applied, Rapaport failed to state
a claim for false light and invasion of privacy ........................ 42

II.   The District Court's denial-as-moot of Rapaport's sanctions motion
should be affirmed ................................................................................... 44

III.  This Court cannot consider any additional issues raised by Rapaport
in his brief because it lacks jurisdiction because of the scope of the
notice of appeal ...................................................................................... 47

CONCLUSION ................................................................................................. 48

# TABLE OF AUTHORITIES

**CASES**

*Aboutaam v. Dow Jones & Co.*,
    180 A.D.3d 573 (1st Dep't 2020) ........................................................25, 26

*Adelson v. Harris*,
    973 F. Supp. 2d 467 (S.D.N.Y. 2013) ...................................................41, 42

*Aguirre v. Best Care Agency, Inc.*,
    961 F. Supp. 2d 427 (E.D.N.Y. 2013) ........................................................25

*Ali v. Woodbridge Township Sch. Dist.*,
    957 F.3d 174 (3d Cir. 2020) ......................................................................43

*Andros v. Gross*,
    No. 03-cv-1775, 2005 WL 3500058 (D.N.J. Dec. 21, 2005) .......................42

*Arista Records, Inc. v. Flea World, Inc.*,
    356 F. Supp. 2d 411 (D.N.J. 2005) .........................................................42, 43

*Atas v. New York Times Co.*,
    No. 22-cv-853-JPO; 2023 WL 5715617 (S.D.N.Y. Sept. 5, 2023) ..............37

*Bloom v. A360 Media LLC*,
    No. 23-cv-11024, 2024 WL 2812905 (S.D.N.Y. June 3, 2024) ...................37

*Bouchard v. Daily Gazette Co.*,
    136 A.D.3d 1233 (3d Dep't 2016) ...........................................................24, 28

*BYD Co. Ltd. v. VICE Media LLC*,
    531 F. Supp. 3d 810 (S.D.N.Y. 2021) ......................................................28, 36

*Catalanello v. Kramer*,
    18 F. Supp. 3d 504 (S.D.N.Y. 2014) ...........................................................41

*Celle v. Filipino Reporter Enters. Inc.*,
    209 F.3d 163 (2d Cir. 2000) .......................................................................32

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)................................................................44, 45

*Cholowsky v. Civiletti*,
    69 A.D.3d 110 (2d Dep't 2009)......................................................23, 29

*Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*,
    868 F. Supp. 501 (E.D.N.Y. 1994) ..............................................27

*Cortes v. Twenty-First Century Fox America, Inc.*,
    285 F. Supp. 3d 629 (S.D.N.Y. 2018)..........................................34

*Daleiden v. Planned Parenthood Fed. of America*,
    No. 21-2068, 2022 WL 1013982 (2d Cir. Apr. 5, 2022) ..................25, 31, 33

*Delaney v. HC2, Inc.*,
    761 F. Supp. 3d 641 (S.D.N.Y. 2025)..........................................8

*Dolphin v. Bank of Am. Mortg. Co.*,
    641 Fed. Appx. 131 (3d Cir. 2016)................................................43

*Enmon v. Prospect Capital Corp.*,
    675 F.3d 138 (2d Cir. 2012)........................................................20

*Fine v. ESPN, Inc.*,
    11 F. Supp. 3d 209 (N.D.N.Y. 2014) ..........................................29

*Fishof v. Abady*,
    280 A.D.2d 417 (1st Dep't 2001) .................................................26

*Ford v. Levinson*,
    90 A.D.2d 464 (1st Dep't 1982) ..................................................23, 25

*Friedman v. Bloomberg L.P.*,
    884 F.3d 83 (2d Cir. 2017)..........................................................25, 27

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
    669 F. Supp. 2d 405 (S.D.N.Y. 2009).........................................21

*Garrison v. State of La.*,
    379 U.S. 64 (1964) ................................................................................36

*Geiger v. Town of Greece*,
    311 Fed. Appx. 413 (2d Cir. 2009) ...............................................25, 28

*Gonzalez v. Gray*,
    216 F.3d 1072 (2d Cir. 2000)..............................................................25

*Gross v. N.Y. Times Co.*,
    82 N.Y.2d 146 (1993) ...................................................................31, 33

*Henry v. Fox News Network LLC*,
    629 F. Supp. 3d 136 (S.D.N.Y. 2022)......................................5, 38, 39, 43

*Holy Spirit Assn. for Unification of World Christianity
    v. New York Times Co.*, 49 N.Y.2d 63 (1979)................................15

*Hosseinzadeh v. Klein*,
    276 F. Supp. 3d 34 (S.D.N.Y. 2017)....................................................31

*Idema v. Wagner*,
    120 F. Supp. 2d 361 (S.D.N.Y. 2000)............................................25, 34

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
    991 F.3d 361 (2d Cir. 2021)................................................................20

*Jacob v. Lorenz*,
    626 F. Supp. 3d 672 (S.D.N.Y. 2022)............................................30, 39

*Jeanty v. Cerminaro*,
    No. 21-1974, 2023 WL 325012 (2d Cir. Jan. 20, 2023) .............................25

*Josephs v. News Syndicate Co., Inc.*,
    5 Misc. 2d 184 (N.Y. Sup. Ct. 1957) ...................................................24

*Katz v. Ambit Northeast, LLC*,
    No. 3:20-cv-1289, 2020 WL 5542780 (D.N.J. Sept. 16, 2020)....................43

*Kinsey v. New York Times Co.*,
    991 F.3d 171 (2d Cir. 2021)..................................................................*passim*

*Komarov v. Advance Mag. Publishers, Inc.*,
    180 Misc. 2d 658 (Sup. Ct. N.Y. Cnty. 1999) .............................................27

*Lan Sang v. Ming Hai*,
    951 F. Supp. 2d 504 (S.D.N.Y. 2013)........................................................15

*LaNasa v. Stiene*,
    No. 22-cv-5686, 2024 WL 1648001 (E.D.N.Y. Apr. 17, 2024) ..................31

*Leang v. Jersey City Bd. of Educ.*,
    198 N.J. 557 (2009)..................................................................................42

*Lee v. Bankers Trust Co.*,
    166 F.3d 540 (2d Cir. 1999)................................................................39, 41

*Lee v. TMZ Productions Inc.*,
    710 Fed. Appx. 551 (3d Cir. 2017) ...........................................................30

*Machleder v. Diaz*,
    801 F.2d 46 (2d Cir. 1986)........................................................................41

*McDougal v. Fox News Network, LLC*,
    489 F. Supp. 3d 174 (S.D.N.Y. 2020).......................................................37

*Misek-Falkoff v. McDonald*,
    63 Fed. Appx. 551 (2d Cir. 2003)..................................................13, 25, 27

*Prince v. Intercept*,
    634 F. Supp. 3d 114 (S.D.N.Y. 2022).......................................................39

*Prince v. The Intercept*,
    No. 21-cv-10075, 2023 WL 4492413 (S.D.N.Y. July 12, 2023)..................37

*Rapaport v. Iyer et al.*,
    No. 1:23-cv-06709, 2025 WL 966275 (S.D.N.Y. Mar. 31, 2025)...............41

*Rates Tech. Inc. v. Broadvox Holding Co.*,
    56 F. Supp. 3d 515 (S.D.N.Y. 2014) ............................................................46

*Reeves v. Assoc. Newspapers, Ltd.*,
    232 A.D.3d 10 (1st Dep't 2024) ...................................................................37

*In re Reeves, No. 22-10353 (MG)*,
    No. 22-10353 (MG), 2023 WL 8607128
    (Bankr. S.D.N.Y. Dec. 12, 2023) ....................................................................8

*Reliance Ins. Co. v. Barron's*,
    442 F. Supp. 1341 (S.D.N.Y. 1977) ..............................................................37

*Reus v. ETC Hous. Corp.*,
    72 Misc. 3d 479 (N.Y. Sup. Ct. 2021) ..........................................................22

*Revson v. Cinque & Cinque, P.C.*,
    221 F.3d 71 (2d Cir. 2000) ............................................................................45

*Rodriguez v. Daily News, L.P.*,
    142 A.D.3d 1062 (2d Dep't 2016) .................................................................26

*Romanova v. Amilus Inc.*,
    138 F.4th 104 (2d Cir. 2025) .........................................................................20

*Schlaifer Nance & Co., v. Estate of Warhol*,
    194 F.3d 323 (2d Cir. 1999) ..........................................................................45

*Seltzer v. Fields*,
    20 A.D.2d 60 (1st Dep't 1963) ......................................................................24

*Seymour v. Lakeville J. Co. LLC*,
    150 Fed. Appx. 103 (2d Cir. 2005) ...............................................................25

*Shawe v. Kramer Levin Naftalis & Frankel LLP*,
    167 A.D.3d 481 (1st Dep't 2018) ..................................................................27

*Sheindlin v. Brady*,
    597 F. Supp. 3d 607 (S.D.N.Y. 2022) ...........................................................23

*Sorensen v. City of New York*,
413 F.3d 292 (2d Cir. 2005)................................................................47

*St. Amant v. Thompson*,
390 U.S. 727 (1968)............................................................................36

*Tacopina v. O'Keeffe*,
645 Fed. Appx. 7 (2d Cir. 2016)........................................................25

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
864 F.3d 236 (2d Cir. 2017)...............................................................35

*Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*,
603 F. Supp. 2d 584 (S.D.N.Y. 2009)................................23, 25, 27

*Tracy v. Newsday, Inc.*,
5 N.Y.2d 134 (1959) ...........................................................................34

*Urias v. Daniel P. Buttafuoco & Assocs., PLLC*,
238 N.E.3d 836 (N.Y. 2024) .............................................................46

*Waterkeeper All., Inc. v. Salt*,
829 Fed. Appx. 541 (2d Cir. 2020) ...................................................47

*Wenz v. Becker*,
948 F. Supp. 319 (S.D.N.Y. 1996).....................................................29

*Yukos Cap. S.A.R.L. v. Feldman*,
977 F.3d 216 (2d Cir. 2020)...............................................................46

**FEDERAL STATUTES**

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1332 ......................................................................................1

28 U.S.C. § 1927 ....................................................................................44

**STATE STATUTES**

Civil Rights L. § 70-a ........................................................1, 10, 12

Civil Rights L. § 74 .........................................................18, 22, 23

Civil Rights L. § 76-a ................................................................21

**FEDERAL RULES**

Fed. R. Civ. P. 11 ..........................................................*passim*

Fed. R. Civ. P. 12 ...................................................................20

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), because Plaintiff-Appellant Gideon Rapaport is a Canadian citizen, Defendant-Appellee Abigail Finkelman is a New York citizen, and the amount in controversy was alleged to exceed $75,000. Complaint ¶¶ 1–3. On August 29, 2025, the District Court issued an opinion and order granting Finkelman's motion to dismiss, denying as moot Rapaport's motion for sanctions under the District Court's inherent authority, and denying as moot Finkelman's motion for sanctions under Fed. R. Civ. P. 11(c). The District Court's opinion and order invited Finkelman to file a renewed motion for sanctions under Fed. R. Civ. P. 11(c).

Although there are other pending motions and proceedings in the District Court (including Finkelman's renewed motion for sanctions and an alternative motion for attorney's fees and costs under Civil Rights L. § 70-a(1)(a)), and there is not yet a judgment from the District Court, Rapaport filed a timely notice of appeal from the August 29, 2025 opinion and order, the District Court's opinion and order is (at least arguably) a "final decision" as to Rapaport's claims under 28 U.S.C. § 1291.

## COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW

1.	Did the District Court err in granting Finkelman's motion to dismiss for failure to state a claim with prejudice?

- 1 -

2.      Did the District Court err in denying as moot Rapaport's motion for

sanctions under the District Court's inherent authority because that motion was

predicated on claiming Finkelman's dismissal arguments were frivolous, and the

District Court adopted Finkelman's dismissal arguments?

3.      Can Rapaport raise arguments concerning any other matter as a part of

this appeal when his notice of appeal was only from the District Court's August 29,

2025 decision, and there was no other final decision or judgment from which he

could yet appeal?

## COUNTERSTATEMENT OF THE CASE

### I.      Factual Allegations

Accepting the allegations in Rapaport's complaint, App'x 1–8

("Complaint") as true, his claims concerned a series of posts by Finkelman on X

(formerly known as Twitter).[1] Finkelman has an account on X under the name

"@clapifyoulikeme." Complaint ¶ 11.

On July 28, 2023, Rapaport filed a *pro se* complaint in another action before

the District Court, *Rapaport v. Iyer et al.*, No. 1:23-cv-06709 (S.D.N.Y.)

---

[1] All of Finkelman's relevant posts are attached to and incorporated in the
Complaint. App'x 9–46.

("*Rapaport I*").[2] Complaint ¶ 9. In *Rapaport I*, Rapaport asserted claims for defamation, defamation by implication, defamation *per se*, invasion of privacy and false light, and intentional infliction of emotional distress against three John Doe defendants. App'x 82–98 ("*Rapaport I* Complaint"). The complaint in *Rapaport I* was later amended, with Rapaport represented by his now-former counsel Richard A. Altman, naming three individuals as defendants. App'x 100–20 ("*Rapaport I* Amended Complaint"). Among other things, the *Rapaport I* Complaint alleged that the defendants in that case "forged a document" by adding "a corporate headshot style photograph of the Rapaport" to a document he claimed "was in the style of a 'wanted' or 'public enemy' poster" and added "the bolded and capitalized text 'DO NOT ADMIT.'" *Rapaport I* Complaint ¶ 7. Rapaport alleged in *Rapaport I* that the defendants used this supposedly fictitious document to stage or forge a photograph that showed the document posted "at the guarded security gate at 601 Lexington Avenue, New York," the office of Rapaport's former employer, Kirkland & Ellis LLP. *Id.* ¶¶ 6–9.

On August 6, 2023, Finkelman, using her X account, made a "thread" (a series of connected posts) discussing the *Rapaport I* lawsuit. Complaint ¶ 11.

---

[2] The original complaint in *Rapaport I* was enclosed in support of Finkelman's motion to dismiss before the District Court.

These posts, sometimes enclosing screenshots of excerpts from the original complaint in *Rapaport I* and other related public materials, laid out Finkelman's reactions to Rapaport's *Rapaport I* lawsuit. In sum, her posts reflected her opinion that *Rapaport I* was a mockworthy lawsuit, and that others should read it for their own amusement.

Specifically, among other things, she said "all of #lawtwitter [should] read this complaint. I promise you will not regret it." Complaint ¶ 12; App'x 11. She referred to potential discovery in *Rapaport I* as "interesting." App'x 13, 23. She joked about potential witnesses at a potential trial in *Rapaport I.* App'x 14. She mocked Rapaport's writing style, litigation tactics, descriptions of himself, and descriptions of his political and legal opinions described in his complaint. App'x 6, 26, 30, 33, 38, 41. She expressed disbelief or skepticism at a variety of the claims he made in *Rapaport I*. App'x 16–21, 23–25, 36. She mocked his monetary prayer for relief. App'x 27. And she mocked Rapaport's now-former attorney in *Rapaport I* and this action, Mr. Altman. App'x 34. Rapaport acknowledged in his Complaint in this case that this "series of comments about the allegations" were "within her First Amendment rights, despite their critical nature." Complaint, ¶ 13.

Most relevant here, in her thread, Finkelman expressed sarcastic disappointment that the original complaint in *Rapaport I* did not include the supposedly faked photograph of the supposedly forged document, saying "Smh

- 4 -

[shaking my head] why wouldn't you include screenshots, I wanna see the <u>fake</u> 'wanted' or 'public enemy' poster." Complaint ¶ 14 (emphasis added); App'x 12. Later in her thread, Finkelman posted the photograph, saying "We got it lads, s/o [shout out] to an anonymous tipster." Complaint ¶ 15; App'x 29. As the Complaint itself said, the photograph Finkelman posted "is a copy of the faked photograph of plaintiff" described in his original complaint in *Rapaport I*. Complaint ¶ 16; *see Rapaport I* Complaint ¶ 7. Rapaport alleged that the photograph "falsely accuses plaintiff, by name and likeness, of being a trespasser, and it falsely implies that he is unfit to practice his profession." Complaint ¶ 20.

The Complaint noted that in 2024, Finkelman updated her thread to include updates from *Rapaport I*, including that Mr. Altman had appeared as Rapaport's counsel, that an amended complaint was filed, and that she found both Mr. Altman and the amended complaint similarly mockworthy. *See* Complaint ¶¶ 24–26.

Rapaport asserted claims against Finkelman for defamation *per se*[3] under New York law and for "false light and invasion of privacy" purportedly under New Jersey law. App'x 5–6.

---

[3] Rapaport makes various references in his opening brief to case law and concepts related to defamation by implication. This is a distinct claim from defamation *per se*, the only defamation claim Rapaport asserted against Finkelman. *See Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 145 (S.D.N.Y. 2022). These arguments are therefore irrelevant.

## II.     Relevant Procedural History

### A.     Rapaport files this case, which is dismissed for failure to state a claim

Rapaport filed this action and his Complaint on August 5, 2024. On August 28, 2024, Finkelman filed a proposed stipulation and order agreeing to accept service and setting her deadline to answer or move to dismiss as October 28, 2024. App'x 55–56. The Court issued the proposed order the next day. App'x 57–58.

On September 9, 2024, Rapaport's now-former counsel Mr. Altman notified the Court in a letter motion to withdraw that Rapaport had terminated his representation. App'x 59.[4] On September 16, 2024, Finkelman filed a letter noting

---

[4] Although this and other components of the procedural history laid out in this brief are not directly relevant to the issues properly before this Court based on the scope of Rapaport's notice of appeal, it is responsive to Rapaport's repeated misrepresentations of the record to claim Finkelman and her counsel are the ones who made this dispute more complicated, more expensive, and more protracted. Rapaport and his former counsel are the ones who have done that, in a repeated effort to silence Finkelman through vigorous assertion of frivolous claims, and filing habits so prolific that the District Court had to order Rapaport to stop filing things — twice — and imposed a pre-filing letter requirement on him even though that is not the District Court's usual individual practice. *See, e.g.*, App'x 360, 611, 887. And, to further illustrate his multiplication of proceedings, Rapaport is pursuing this appeal now even though he did not yet need to, and proceedings before the District Court concerning Finkelman's request for fees and costs either under Rule 11 or New York's anti-SLAPP statute are still pending. Presumably, should he lose and fees are awarded against him, he will appeal that too.

This recitation does not represent all of the vexatious over-complication of this dispute by Rapaport and his former counsel. The record before this Court is replete with additional examples.

she did not oppose the motion to withdraw subject to a limited request that the Court retain jurisdiction over Mr. Altman for purposes of a future motion for sanctions under Rule 11. App'x 62–64. On September 17, 2024, the Court granted the motion to withdraw and granted Finkelman's request to retain jurisdiction over Mr. Altman, ordering that a motion for sanctions be filed on or before October 28, 2024. App'x 66. Since then, Mr. Rapaport has proceeded *pro se* in this case.

On September 27, 2024, the undersigned counsel provided notice of the motion for sanctions under Rule 11(c)(2), enclosing the motion itself and a letter describing all substantive bases for the motion. App'x 216–31. On October 17, 2024, the District Court docketed a motion filed by Rapaport seeking sanctions under the "inherent authority of the Court and New York Judiciary Law § 487…." App'x 888. Rapaport's sanctions motion — which was filed without notice or any invocation of Rule 11(c) — was entirely predicated on the argument that the undersigned, by asserting Rapaport's claims were frivolous in a prior Rule 11(c) notice letter, had supposedly taken frivolous positions in that letter, which had either not been filed in court or — even if and when they were — were adopted by the District Court in its relevant orders.

On October 18, 2024, the twenty-one-day safe harbor period under Rule 11 expired. The Complaint — the subject of Finkelman's Rule 11 motion — was not withdrawn. On October 21, 2024, Finkelman filed a motion to dismiss the

- 7 -

complaint with prejudice for failure to state a claim, along with an accompanying memorandum of law, declaration, and supporting exhibits. App'x 76–209.

On October 21, 2024, Finkelman also filed a first motion for sanctions. App'x 210–93. On October 22, 2024, the Court docketed a motion sent by Rapaport to the Court on October 17, 2024, for sanctions against the undersigned, purportedly based on some combination of the above-mentioned Rule 11 letter and the substantive legal issues raised in the letter (which were then raised in Finkelman's motion to dismiss and were adopted by the District Court in its decision granting the motion to dismiss).[5] App'x 888–924.

On October 21, 2024, the District Court docketed two letter motions filed by Rapaport in addition to his un-noticed sanctions motion: one seeking "[e]xpedited discovery" and another seeking an "[e]xpedited [s]tay" of Finkelman's motion for sanctions (without staying his own un-noticed motion for sanctions). App'x 294–6. The District Court responded by denying the "expedited discovery" motion and staying both sanctions motions pending resolution of the motion to dismiss. App'x 305. After asking the District Court to stay briefing of Finkelman's sanctions

---

[5] Judiciary Law § 487 is doubly inapplicable in this case. First, it does not apply in federal court. *Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 663–70 (S.D.N.Y. 2025). Second, it does not provide any authority to sanction an attorney. *In re Reeves*, No. 22-10353 (MG), 2023 WL 8607128, at *7 (Bankr. S.D.N.Y. Dec. 12, 2023).

motion, Rapaport then filed another letter attempting to litigate the merits of the sanctions motions. App'x 354–5. Then in response to Finkelman's response objecting, App'x 356, Rapaport filed yet another letter. App'x 357–8. The District Court directed that no more letters be filed. App'x 360.

On February 12, 2025, after the Court's order on February 10 directing her to do so, App'x 375–6, Finkelman filed a letter motion to stay discovery, App'x 377–8, which the Court granted on February 27, App'x 388–9.

On August 29, 2025, the Court issued an opinion and order: (1) granting Finkelman's motion to dismiss in its entirety and with prejudice; (2) denying as moot the pending motions for sanctions; and (3) directing Finkelman to file a renewed motion for sanctions should she wish by September 15, 2025. Special App'x 1–16 ("MTD Decision"). This deadline was then amended by the Court *sua sponte* to October 3, 2025. App'x 412.

**B.** **Rapaport files a duplicative lawsuit against Finkelman in response to the dismissal of his claims, and the District Court stays that duplicative lawsuit and imposes a pre-motion letter requirement on Rapaport as an exception to the District Court's customary individual practices**

After the District Court issued the MTD Decision, on the same day (August 29, 2025), the undersigned wrote a letter to the District Court requesting clarification concerning Rule 11 procedures for the forthcoming renewed motion for sanctions, and disclosed Finkelman's intention to also file a motion for

- 9 -

attorney's fees and costs under Civil Rights Law § 70-a(1)(a). App'x 411. The September 15 deadline was then amended by the Court *sua sponte* to October 3, 2025. App'x 412. Consistent with the usual procedures of motion practice, Rapaport would have an opportunity to oppose both motions.

On September 1, 2025, Rapaport sent and caused to be filed on September 2 a complaint for a new action against Finkelman. *Rapaport v. Finkelman*, No. 25-cv-07294-JGLC (the "New Rapaport Case"), ECF no. 1 (S.D.N.Y. Sept. 2, 2025); App'x 416–22 (the "New Rapaport Complaint"). The New Rapaport Complaint purported to seek "declaratory relief" for "repeated threats made by [Ms.] Finkelman to bring suit under the so-called anti-SLAPP … law enacted … as New York Civil Rights Law § 70-a" clearly in response to the undersigned's August 29 letter to the District Court. New Rapaport Complaint ¶ 1.

The undersigned learned of the New Rapaport Complaint on September 5, 2025, and promptly contacted Rapaport to demand that he withdraw it or otherwise Finkelman would need to move forward with motion practice to protect herself from having to defend against vexatious and multiplying proceedings. App'x 424–5. The same day, Finkelman notified the District Court and filed a motion for a temporary restraining order imposing a filing injunction on Rapaport that would prevent him from filing further lawsuits or motions against Finkelman without

- 10 -

prior leave of the District Court. App'x 426–543.[6] The District Court denied the

temporary restraining order motion, but in doing so stayed all proceedings in the

New Rapaport Case and, contrary to the District Court's usual practice laid out in

the individual rules for Judge Clarke, ordered Rapaport to start observing a pre-

motion letter requirement requesting leave before filing future motions before the

District Court in this case. App'x 608–12. Since then, the District Court has denied

Rapaport's requests for leave to file motions, sur-replies, and so on. *See* App'x

621–2, 886–7.

**C.**   **Finkelman proceeds in filing her renewed motion for sanctions and alternative motion for attorney's fees and costs under New York's Anti-SLAPP law**

On September 4, 2025, the undersigned sent emails to Rapaport (with a

further copy sent to Rapaport by Federal Express) and Mr. Altman enclosing a

draft of the renewed motion for sanctions and associated brief. App'x 629–61.

Neither Rapaport nor Mr. Altman responded. App'x 626 ¶ 7.

On October 3, 2025, Finkelman filed her renewed motion for sanctions,

App'x 623–722, and her alternative motion for attorney's fees and costs under

---

[6] Rapaport's appendix selectively excludes exhibits submitted in support of the motion, but they are not relevant to the issues within the jurisdictional scope of this appeal, so Finkelman submits there is no need to include them in a supplemental appendix. Should the Court wish to see an organized recreation of these motion papers, Finkelman will happily provide them in a supplemental appendix.

Civil Rights L. § 70-a(1)(a), App'x 723–738. Each motion is fully briefed and is pending decision by the District Court.

### III.     Relevant Decision Below

As referenced above, the MTD Decision granted Finkelman's motion to dismiss in its entirety, and accordingly denied Rapaport's motion for inherent sanctions as moot. The District Court's reasoning focused on four principal issues.

First, because Rapaport sought to assert a defamation claim under New York law and a separate false light and invasion of privacy claim under New Jersey law, the District Court applied binding precedent from this Court and New York courts to apply New York's choice-of-law analysis to a multi-state defamation claim. MTD Decision at 5–6. The District Court concluded that New York law applied to all of Rapaport's claims because nearly every relevant factor gave New York the greatest interest in this dispute. In particular, the District Court noted that Finkelman is based in New York, the activities at issue (i.e., Finkelman's statements) were made from New York, the underlying issue about *Rapaport I* related to New York, and the alleged damages are "felt most strongly in New York where he went to law school and where he would seek to practice law." MTD Decision at 6 (citing Complaint ¶ 7). In addition, the District Court noted that it reached a similar conclusion for similar reasons in addressing choice-of-law in a prior decision in *Rapaport I*. MTD Decision at 5–6. Because New York law

- 12 -

applied, the District Court dismissed Rapaport's false light and invasion of privacy claim because those torts are not recognized under New York law. MTD Decision at 6.

Second, the District Court concluded that Rapaport's defamation claim failed and must be dismissed because Finkelman's statements were immunized fair and true reports concerning a judicial proceeding under New York law. MTD Decision at 8–11 (citing Civil Rights L. § 74). The District Court's analysis focused on the fact that the photograph posted by Finkelman was not directly included in his original complaint in *Rapaport I* because he "appears to agree that, had the photograph been attached to the original *Rapaport I* complaint, [Finkelman] could have tweeted it without exposing herself to liability." MTD Decision at 9. The District Court then noted, citing binding[7] New York state intermediate appellate precedent, that Civil Rights Law § 74 "also extends to 'background material with regard to the case' so long as the statement 'is a

---

[7] This Court "ha[s] made clear that '[t]he holding of an intermediate appellate state court … is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Misek-Falkoff v. McDonald*, 63 Fed. Appx. 551, 552–53 (2d Cir. 2003) (summary order) (cleaned up) (quoting *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 399 (2d Cir. 2001)).

substantially accurate description of the allegation.'" MTD Decision at 9 (quoting *Fishof v. Abady*, 720 N.Y.S.2d 505, 506 (1st Dep't 2001)).

The only remaining question, therefore, was whether the statement was a fair and true report of the proceedings. The District Court explained that this Court instructed that the "key test courts have adopted to resolve whether a report qualifies for the fair report privilege is whether the ordinary viewer or reader can determine from the publication itself that the publication is reporting on a judicial proceeding." MTD Decision at 9 (quoting *Kinsey v. New York Times Co.*, 991 F.3d 171, 178–79 (2d Cir. 2021)). The District Court explained this threshold was satisfied in this case because "the photograph … was *substantively described* in the *Rapaport I* complaint" and that Finkelman's posting of the photograph and saying "we got it" "conveyed the message that the same fake photograph described in the [*Rapaport I*] complaint is the same one she received and was tweeting." MTD Decision at 10 (emphasis in original). The District Court explained that Finkelman did not "offer commentary about the visual authenticity of the photo, or give an opinion on whether, based on the photograph, Rapaport's allegations had merit" or otherwise "provide comments or information that was different than, or separate from, the underlying allegations in the *Rapaport I* complaint." MTD Decision at 10

- 14 -

(citing *Holy Spirit Assn. for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 67–68 (1979)).[8]

On this basis, the District Court concluded that regardless of whether the photograph was attached to the original *Rapaport I* complaint — rather than merely described in it, which it was — Finkelman's statements "present[] a clear relation to the relevant paragraphs from *Rapaport I* complaint" and therefore "qualifie[d] for Section 74 immunity…." MTD Decision at 11.

Third, the District Court assessed, even if Finkelman's posting of the photograph were not immunized by Section 74, whether the statements at issue were actionable as defamation. The District Court concluded they were not. MTD Decision at 11–13. The District Court considered Rapaport's proffered interpretation of the statements, rejecting that Finkelman's statement "suggest[ed]

---

[8] Rapaport cites to *Holy Spirit* (tellingly without a pin cite) to claim the case "forbids material distortions or additions that alter the report's effect on the reasonable person" and that this was somehow equivalent to what he called posting the photograph "without clear disclaimer…." Rapaport Br. at 18. *Holy Spirit*, consistent with other case law interpreting Civil Rights Law § 74, looks at whether the statements at issue are "substantially accurate" accounting for "some liberality … if the substance be substantially stated." *Holy Spirit Assn. for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 67 (1979). Rapaport similarly cites *Lan Sang*, even though that case applied Civil Rights Law § 74 to statements about a lawsuit that were later rendered false by updates in that case, because they were accurate at the time they were made. *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 524 (S.D.N.Y. 2013).

- 15 -

Rapaport is a 'trespasser' or that he is 'unfit to practice his profession' as an attorney" because she posted a photograph he was discussing in his own prior lawsuit. MTD Decision at 12 (quoting *Rapaport I* Compl., ¶¶ 6–9). Instead, the District Court concluded it was "clear, to an ordinary reader, that [Finkelman] derived both the subject and source of the content in the Twitter thread from the *Rapaport I* complaint" and, therefore, "did not write or suggest anything that would cause an ordinary reader to have a different opinion than one they would have if they merely read the *Rapaport I* complaint…." MTD Decision at 12–13 (citing *Pantheon Properties, Inc. v. Houston*, No. 20-cv-3241-ALC, 2021 WL 4523619, at *4 (S.D.N.Y. Sept. 30, 2021)).

Fourth, even if Civil Rights Law § 74 did not immunize Finkelman's statements, and even if the statements were actionable as defamation, the District Court concluded that the statements (in this case, the posting of the photograph) were true. "Consistent with the above analysis[,]" the District Court noted that Finkelman's posts, by their own terms, "described the photograph as 'fake[]'" and therefore adopted Rapaport's "truth … that the photograph is not real." MTD Decision at 14. Because Finkelman accepted Rapaport's representation that the photograph was fake, and both in this lawsuit and his amended complaint in *Rapaport I* he confirmed that she was discussing the same photograph, there was

- 16 -

no basis for Rapaport to plausibly allege Finkelman's post was false. MTD Decision at 13–14.

The District Court granted Finkelman's motion to dismiss Rapaport's claims with prejudice. MTD Decision at 14–16. Because the MTD Decision granted Finkelman's motion in its entirety, and Rapaport's inherent sanctions motion was predicated on those positions being supposedly frivolous, the District Court denied Rapaport's motion as moot without leave to renew it. By contrast, the District Court denied as moot Finkelman's motion for Rule 11 sanctions and invited her to renew the motion if she wished. MTD Decision at 16.

## SUMMARY OF THE ARGUMENT

Rapaport's claims against Finkelman are, by their own terms, factually and legally insufficient to state a claim. The District Court properly granted the motion to dismiss with prejudice, and thereby properly denied-as-moot Rapaport's un-noticed sanctions motion because it was predicated on arguing that Finkelman's arguments (which the District Court adopted as to each issue it reached in the MTD Decision) were purportedly not just frivolous, but entirely lacking in support according to him.

As to Rapaport's defamation claim against Finkelman, the District Court's grant of the motion to dismiss with prejudice should be affirmed for any of four independent reasons. First, Finkelman's statements at issue in Rapaport's

- 17 -

Complaint are protected by Civil Rights Law § 74, which provides absolute immunity for statements made by "any person, firm or corporation" that publishes "a fair and true report of any judicial proceeding…." Civil Rights L. § 74. An unambiguous and copious set of precedents in this Court, the District Court, and New York State courts confirm this immunity applies to statements regardless of whether they are drawn directly from filings in the judicial proceeding (rather than "background material" directly relevant to that proceeding), regardless of whether the statement is in the form of words or media, and is applied liberally to protect open discourse about judicial proceedings so long as the statement does not imply conduct beyond what is at issue in the proceeding. <u>Second</u>, even if not immunized, Finkelman's statements are not actionable as a matter of law. <u>Third</u>, even if not immunized and even if actionable, Finkelman's statements were true because they adopted Rapaport's representation that the photograph at issue was fake. So, even taking his allegations as true, her statement (posting the photograph) was unquestionably true. <u>Fourth</u>, even if not immunized, actionable, and plausibly false, Finkelman's statements still cannot give rise to a defamation claim because New York law requires those statements be made with actual malice, which Rapaport did not and cannot plausibly allege.

As to Rapaport's "false light and invasion of privacy" claim, the District Court's grant of the motion to dismiss with prejudice should be affirmed for any of

two independent reasons. <u>First</u>, the District Court properly concluded that New York law applied to all of Rapaport's claims, including this one, based on analysis of New York's strong interests in and connection to the claims in this case. New York does not recognize a false light or invasion of privacy tort, and therefore the District Court properly dismissed the claim for this reason. <u>Second</u>, even if New Jersey law did apply, each of the substantive deficiencies of Rapaport's defamation claim explained herein would apply with equal force to this claim. Accordingly, if this claim could be asserted, Rapaport failed to state a claim for relief.

As to Rapaport's un-noticed sanctions motion, the District Court properly denied the motion as moot (without the need for opposition by Finkelman). The motion was predicated on Rapaport's belief that Finkelman's legal positions, asserted in one letter to the District Court and a Rule 11(c)(2) letter, were not just frivolous but totally lacking in any support. The positions were not only meritorious, they were adopted by the District Court on every issue it reached, necessarily defeating Rapaport's motion on the merits.

Finally, Rapaport asserts various issues that are not before this Court in this appeal and for which, regardless of the merits of Rapaport's positions (though there are none), this Court cannot consider those merits or provide any relief to Rapaport.

The District Court's MTD Decision should be affirmed.

- 19 -

## STANDARD OF REVIEW

This Court "review[s] *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Romanova v. Amilus Inc.*, 138 F.4th 104, 108 (2d Cir. 2025). This Court reviews the denial of a motion for sanctions for abuse of discretion. *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021). Abuse of discretion can be found when the district court's decision was the result of "an erroneous view of the law or ... a clearly erroneous assessment of the evidence." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012).

## ARGUMENT

### I. The District Court's grant of the motion to dismiss with prejudice should be affirmed

This Court should affirm the District Court's grant of Finkelman's motion to dismiss Rapaport's claims with prejudice. The two claims asserted — defamation under New York law and "false light and invasion of privacy" under New Jersey law — were procedurally and substantively defective in multiple respects, including the multiple grounds identified in the MTD Decision (along with others). Because this Court reviews the grant of a motion to dismiss *de novo*, the grounds the District Court reached, and any others, can be a sufficient ground to affirm that

decision. However, the District Court's considered reasoning is more than sufficient, and no additional analysis is required here.

### A. Rapaport failed to state a claim for defamation against Finkelman

Under New York law, a defamation claim must allege "(1) a false statement about the [complainant]; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009) (alterations in original) (quoting *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009)).

However, when the statement alleged to be defamatory is a "communication in a place open to the public or a public forum in connection with an issue of public interest" New York considers the defamation case to be an "action involving public petition and participation" and requires the plaintiff to prove that "any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false," i.e., actual malice, rather than mere negligence. Civil Rights L. § 76-a(1)(a)(1), (2). The term "public interest" is "construed broadly, and shall mean any subject other than a purely private matter." *Id.* § 76-a(1)(d). This includes public statements concerning

- 21 -

lawsuits. *See, e.g.*, *Reus v. ETC Hous. Corp.*, 72 Misc. 3d 479, 485 (N.Y. Sup. Ct. 2021), *aff'd*, 203 A.D.3d 1281 (3d Dep't 2022).

Rapaport did not and cannot state a claim for defamation against Finkelman for four principal reasons.[9] <u>First</u>, Rapaport's claim was barred by statutory immunity under New York law protecting statements concerning judicial proceedings. <u>Second</u>, the statements Rapaport alleged were defamatory are non-actionable opinions. <u>Third</u>, even if the Court found the statements were not opinions, the statements are true. <u>Fourth and finally</u>, even if the Court found the statements were not opinions and were not true, Rapaport is required to allege the statements were made with actual malice and has not made (and could not make) any allegations to satisfy that burden.

### 1. Finkelman is immune from Rapaport's claims under New York Civil Rights Law § 74

New York provides absolute immunity barring civil actions "against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." Civil Rights L. § 74.

---

[9] The arguments raised by Finkelman in support of her motion to dismiss the defamation claim apply with equal force to the false light and invasion of privacy claim. *See infra* § I(B).

Rapaport has repeatedly referenced the second sentence of Civil Rights Law § 74, in this appeal and before the District Court, claiming this limitation to § 74's applicability is relevant in this case. He is wrong. That second sentence of the statute says, "This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof." Civil Rights L. § 74. By its plain meaning, that text refers to a "matter" other than the judicial proceeding. It does not reference in any way a requirement that statements be directly quoted from a proceeding. Rather, "[f]or the privilege to apply, the statement at issue must be <u>connected</u> to a judicial proceeding." *Sheindlin v. Brady*, 597 F. Supp. 3d 607, 630 (S.D.N.Y. 2022) (emphasis added). Furthermore, both federal and state courts have already rejected Rapaport's proposed interpretation. *See Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 588 (S.D.N.Y. 2009) (applying section 74 immunity to report about investigation regardless of whether the writer "learned of the investigation through an official press release or a draft release or some other means"); *Cholowsky v. Civiletti*, 69 A.D.3d 110, 115 (2d Dep't 2009) ("[T]he fact that the defendants derived information about the judicial proceedings from secondary sources did not mean that Civil Rights Law § 74 was inapplicable."); *Ford v. Levinson*, 90 A.D.2d 464, 465 (1st Dep't 1982) (applying immunity to statements

- 23 -

that "considered … in light of the totality of the circumstances presented … can[not] reasonably be considered a separate libel or a comment that affects in a legally significant way the applicability of the privilege set forth in Civil Rights Law § 74" because the statement "constitutes background to the misconduct attributed" in the judicial proceeding at issue "rather than a separate and independently defamatory accusation"); *Seltzer v. Fields*, 20 A.D.2d 60, 62 (1st Dep't 1963) ("It is enough if the offending statement may <u>possibly</u> bear on the issues in litigation now or at some future time…. [I]t would seem that the barest rationality, divorced from any palpable or pragmatic degree of probability, suffices." (emphasis added)); *Josephs v. News Syndicate Co., Inc.*, 5 Misc.2d 184, 184 (N.Y. Sup. Ct. 1957) (applying immunity "even though the article may have been embellished with the fair and expectant comment of the story teller, who adds to the recital a little touch of his piquant pen" (cleaned up)).

A statement qualifies for the privilege if "'the ordinary viewer or reader' can 'determine from the publication itself that the publication is reporting on [a judicial] proceeding.'" *Kinsey v. New York Times Co.*, 991 F.3d 171, 179 (2d Cir. 2021). And a statement to which the immunity applies is "fair and true" if "it is substantially accurate, that is if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Id.* at 178; *Bouchard v. Daily Gazette Co.*, 136 A.D.3d 1233, 1234 (3d Dep't 2016)

- 24 -

("[T]he language used 'does not suggest more serious conduct than that actually suggested in the official proceeding.'" (quoting *Geiger v. Town of Greece*, 311 Fed. Appx. 413, 417 (2d Cir. 2009)). The immunity provided by section 74 has "a liberal interpretation … so as to provide broad protection to [] accounts of judicial proceedings." *Kinsey* at 179 (quoting *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2017)). New York courts and courts in this Circuit have repeatedly applied section 74 in this manner to dismiss defamation claims where relevant.[10]

Finkelman's statements at issue in this case — posting the photograph at issue in *Rapaport I* and saying that what she posted was the photograph at issue in *Rapaport I* — were fair and true reports concerning *Rapaport I*, which is a judicial proceeding. Rapaport's pleadings explicitly state that this is what Finkelman was

---

[10] *See, e.g.*, *Jeanty v. Cerminaro*, No. 21-1974, 2023 WL 325012 (2d Cir. Jan. 20, 2023) (summary order); *Daleiden v. Planned Parenthood Fed. of America*, No. 21-2068, 2022 WL 1013982 (2d Cir. Apr. 5, 2022) (summary order); *Kinsey*, 991 F.3d at 179–180; *Tacopina v. O'Keeffe*, No. 15-3003, 645 Fed. Appx. 7 (2d Cir. 2016) (summary order); *Seymour v. Lakeville J. Co. LLC*, 150 Fed. Appx. 103 (2d Cir. 2005) (summary order); *Misek-Falkoff v. McDonald*, 63 Fed. Appx. 551 (2d Cir. 2003) (summary order); *Gonzalez v. Gray*, 216 F.3d 1072 (2d Cir. 2000) (summary order); *Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 457–60 (E.D.N.Y. 2013); *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 588–89 (S.D.N.Y. 2009); *Idema v. Wager*, 120 F. Supp. 2d 361, 367–69 (S.D.N.Y. 2000), *aff'd*, 29 Fed. Appx. 676 (2d Cir. 2002); *Aboutaam v. Dow Jones & Co.*, 180 A.D.3d 573, 574–75 (1st Dep't 2020); *Ford v. Levinson*, 90 A.D.2d 464, 465 (1st Dep't 1982).

doing. *See* Complaint ¶ 11 ("The plaintiff's *pro se* complaint was the subject of a series of comments by the defendant shortly after it was filed."). And New York state decisions applying Civil Rights Law § 74 have repeatedly affirmed that its protections apply to media and text alike. *See, e.g.*, *Aboutaam v. Dow Jones & Co.*, 180 A.D.3d 573, 574 (1st Dep't 2020) (applying section 74 immunity to use of photos of plaintiff in report about antiquities looting investigations because they were "appropriately related to the subject of the article and are accompanied by accurate captions" because "[t]heir inclusion was a reasonable exercise of editorial discretion"); *Rodriguez v. Daily News, L.P.*, 142 A.D.3d 1062, 1062–4 (2d Dep't 2016) (affirming section 74 immunity for "news reports containing [plaintiff's] photograph, which stated that police were looking for him" even though he claimed police were mistaken in using his photograph because immunity "was designed precisely to protect the publisher of a fair and true report from liability for just such an error and to relieve it of any duty to expose the error through its own investigation").

Although the photograph was not included in the original complaint in *Rapaport I*, that is of no moment. Speakers are entitled to reference "background material with regard to the case so long as the statement is a substantially accurate description of the allegation." *Fishof v. Abady*, 280 A.D.2d 417, 417–18 (1st Dep't

- 26 -

2001) (citation omitted).[11] The *Rapaport I* pleadings described precisely the photograph Finkelman posted. *See Rapaport I* Complaint ¶¶ 7–9. The application of section 74 immunity does not turn on whether something is directly drawn from a document. Instead, it turns on whether the statement is "a fair and accurate report…." *Test Masters Educ. Servs.*, 603 F. Supp. 2d at 588 (applying section 74 immunity to report about investigation regardless of whether the writer "learned of the investigation through an official press release or a draft release or some other means").[12]

---

[11] This Court "ha[s] made clear that '[t]he holding of an intermediate appellate state court … is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Misek-Falkoff v. McDonald*, 63 Fed. Appx. 551, 552–53 (2d Cir. 2003) (summary order) (cleaned up) (quoting *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 399 (2d Cir. 2001)).

[12] Rapaport claims Civil Rights Law § 74 is limited "strictly to the proceeding's contents." Rapaport Br. 20. That is wrong, and the authorities he cites are inapposite and do not say otherwise. *See Friedman v. Bloomberg L.P.*, 884 F.3d 83, 95 (2d Cir. 2017) (applying section 74 to some claims but not others, with no analysis related to background material); *Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*, 868 F. Supp. 501, 508–9 (E.D.N.Y. 1994) (denying motions to dismiss and for partial summary judgment because report, which was in "narrative fashion" and made no direct references to foreign trial testimony, could not rely on the fact that the reporter "attended some of the proceedings" to apply section 74); *Shawe v. Kramer Levin Naftalis & Frankel LLP*, 167 A.D.3d 481, 482 (1st Dep't 2018) (affirming trial court decision cited by Rapaport and applying Civil Rights Law § 74, including to statements not drawn directly from a filing); *Komarov v. Advance Mag. Publishers, Inc.*, 180 Misc. 2d 658, 659 (Sup. Ct. N.Y. Cnty. 1999) (granting motion to dismiss based on section 74).

Furthermore, Rapaport admitted in the Complaint that the photograph Finkelman posted was the same one at issue in *Rapaport I*. Complaint ¶¶ 8–9. And then Rapaport filed an amended complaint in *Rapaport I* that enclosed as an exhibit two versions of the same photograph Finkelman posted. App'x 122–6. It is axiomatic that public speakers referencing the contents of documents filed in a judicial proceeding, including text and images, are entitled to section 74 immunity. *See Kinsey*, 991 F.3d at 179. Rapaport's admissions in this case, and his amended complaint and associated exhibits in *Rapaport I* confirm beyond any doubt that Finkelman's posts were fair and true reports of his complaint in *Rapaport I*.

Section 74 applies so long as "the language used 'does not suggest more serious conduct than that actually suggested in the official proceeding.'" *Bouchard*, 136 A.D.3d at 1234 (quoting *Geiger v. Town of Greece*, 311 Fed. Appx. 413, 417 (2d Cir. 2009)). This is the case regardless of whether statements include commentary, one-sided analysis, or hyperbole. *See Geiger v. Town of Greece*, 311 Fed. Appx. 413, 417 (2d Cir. 2009) (summary order) ("[W]e observe, as the district court did, that the [] article uses more colorful language than the press release, but it does not 'suggest more serious conduct than that actually suggested in the official proceeding,' and, therefore, it cannot provide a legal basis for plaintiff's libel claim." (quoting *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005)); *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 822

- 28 -

(S.D.N.Y. 2021) (dismissing claims on section 74 immunity because "even if the language used is at times hyperbolic, the discussion of the legislative process is 'fair and true' and conveys accurately the nature of the proceedings"); *Cholowsky*, 69 A.D.3d at 114–15 (applying section 74 even though plaintiff claimed coverage was not fair and true because it did not provide plaintiff's "side").[13] This threshold is comfortably satisfied here, for the reasons the District Court articulated in the MTD Decision.

---

[13] Rapaport's reference to the *Wenz* case to claim the contrary is not supported by that decision, which is inapposite. *See Wenz v. Becker*, 948 F. Supp. 319, 323 (S.D.N.Y. 1996) (denying summary judgment because report referenced wrongdoing by plaintiff without any "focus" on a relevant lawsuit, outside the context of later discussion of the lawsuit, and without any qualifying context that would suggest to the reader that the statements were concerning a lawsuit). Rapaport's reference to the *Fine* decision is similarly off the mark. *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 220, 224 (N.D.N.Y. 2014) (concluding "challenged parts of Publications may be reports 'of' an official proceeding only because they quote and describe, and provide background information regarding, the Tape" and denied the motion on other grounds because of the standard of review limiting the ability to review relevant documents).

Accordingly, regardless of whether Finkelman's statements at issue are actionable or not, they are immunized under New York law as the District Court held.[14]

### 2. Finkelman's statements were non-actionable opinions

Even if the District Court erred in applying section 74 immunity to Finkelman's statements (which it didn't), Rapaport still did not state a claim for defamation against Finkelman because the statements alleged to be defamatory are non-actionable opinions. "Among other questions of law, courts are charged with distinguishing between statements of fact, which may be defamatory, and expressions of opinion, which 'are not defamatory; instead, they receive absolute protection under the New York Constitution.'" *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 690 (S.D.N.Y. 2022) (quoting *Live Face on Web, LLC v. Five Boro Mold Specialist Inc.*, No. 15-cv-4779, 2016 WL 1717218, at *2 (S.D.N.Y. Apr. 28, 2016)). When determining whether a statement is a non-actionable opinion, courts evaluate "(1) whether the specific language in issue has a precise meaning which is

---

[14] New Jersey law also recognizes an absolute immunity for fair and true reports concerning judicial proceedings. *See Lee v. TMZ Productions Inc.*, 710 Fed. Appx. 551, 557–59 (3d Cir. 2017) (Scirica, J.) (non-precedential opinion) (describing New Jersey doctrine). For this reason, although the District Court did not need to reach it because of the choice-of-law analysis, even if New Jersey law applied to Rapaport's "false light and invasion of privacy" claim, that claim also would have been barred by the fair report immunity.

readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication … [or the] surrounding circumstances are such as to 'signal… readers or listeners that what is being read or heard is likely to be opinion, not fact.'" *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153 (1993) (cleaned up). "In determining what constitutes a nonactionable opinion, the 'dispositive inquiry' is whether a reasonable reader 'could have concluded that [the statements in question were] conveying facts about the plaintiff.'" *Daleiden*, 2022 WL 1013982, at *2 (alterations in original) (quoting *Gross*, 82 N.Y.2d at 152).

Statements criticizing or mocking a party's public pre-litigation or litigation positions are classic statements of opinion. Indeed, precisely these sorts of statements have been deemed opinions by courts in this Circuit. *See, e.g.*, *LaNasa v. Stiene*, No. 22-cv-5686, 2024 WL 1648001, at *8 (E.D.N.Y. Apr. 17, 2024); *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 47–48 (S.D.N.Y. 2017).

None of Finkelman's statements, together or individually, including her posts of or concerning the photograph, could be reasonably read to convey facts about Rapaport. Instead, Finkelman's entire thread, including her posting of the photograph, communicated one clear opinion to any reasonable reader: she thought *Rapaport I* was a mockworthy and amusing lawsuit. Among other things, she said "all of #lawtwitter [should] read this complaint. I promise you will not regret it."

- 31 -

App'x 11. She referred to potential discovery in *Rapaport I* as "interesting." App'x 13, 32. She joked about potential witnesses at a potential trial in *Rapaport I*. App'x 14. She mocked Rapaport's writing style, litigation tactics, descriptions of himself, and descriptions of his political and legal opinions in his complaint. App'x 6, 26, 30, 33, 38, 41. She expressed disbelief or skepticism at a variety of the claims he made in *Rapaport I*. App'x 16–21, 23–25, 36. She mocked his monetary prayer for relief. App'x 27. She mocked Rapaport's now-former attorney in *Rapaport I* and this action, Mr. Altman. App'x 34. These statements are all opinions, and Rapaport does not claim otherwise. *See* Complaint, ¶ 13 (noting most of Finkelman's posts "were within her First Amendment rights, despite their critical nature").

But the posts Rapaport claims are actionable cannot, individually or together with her other statements, be read differently. *See Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (noting courts must "give the disputed language a fair reading in the context of the *publication as a whole*" (emphasis in original) (quoting *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 380 (1995))). Finkelman expressed sarcastic disappointment that the original complaint in *Rapaport I* did not include the photograph, saying "Smh [shaking my head] why wouldn't you include screenshots, I wanna see the fake 'wanted' or 'public enemy' poster." App'x 12. When Finkelman posted the photograph, she

- 32 -

said "We got it lads, s/o [shout out] to an anonymous tipster." App'x 29.[15] Posting the photograph in that context cannot reasonably be read to be anything but an opinion, in particular an opinion that the photograph was as amusing as the lawsuit. *See Daleiden*, 2022 WL 1013982, at *3 ("[A] reasonable reader would have 'arrive[d] with an appropriate amount of skepticism, with the expectation that they [were], in all probability, going to hear opinion[.]" (alterations in original) (quoting *Melius v. Glacken*, 943 N.Y.S.2d 134, 136 (2d Dep't 2012)).

Rapaport's claims turn exclusively on squinting at Finkelman's statements to contort them into anything but the opinions that they are. But none of Finkelman's statements can be reasonably read to have the meaning Rapaport claims. The Complaint alleges that Finkelman posting the photograph communicated that the photo "had been publicly posted in the lobby of the office building where plaintiff was employed" and "was evidence that he had been fired for sexual misconduct and was somehow barred from entry to the building." Complaint ¶ 17.

---

[15] Even if the statements or posts were actionable (which they aren't), Finkelman's posting of the photograph separately forecloses Plaintiff's claims against Finkelman. "[A]lthough a statement of opinion may be actionable if it 'implies a basis in facts which are not disclosed to the reader or listener,' that was not the case here. Instead, [the] statements were 'accompanied by a recitation of the facts on which [they were] based,' which signaled to readers 'that what [was] being read … [was] likely to be opinion, not fact.'" *Daleiden*, 2022 WL 1013982, at *3 (alterations in original) (quoting *Gross*, 82 N.Y.2d at 153–54).

This reading is not a reasonable one. Rather, this reading runs afoul of courts' frequent and repeated dismissal of defamation claims based on "insufficient innuendo when only a strained, unreasonable, unjustifiable innuendo … would support the plaintiff's contention that the challenged language exposes [him] to 'public shame, hatred, or ostracism.'" *Idema v. Wagner*, 120 F. Supp. 2d 361, 368 (S.D.N.Y. 2000) (cleaned up); *see also, e.g.*, *Tracy v. Newsday, Inc.*, 5 N.Y.2d 134, 137 (1959) ("'The pleaded innuendo is strained, unreasonable and unjustified.' It does not explain any statement in the article, but adds an entirely new and independent thought that finds no support in the article." (cleaned up)).

Accordingly, Finkelman's statements are non-actionable opinions as the District Court held.

### 3. Even if actionable, Finkelman's statements were true

Even if the District Court erred in applying Section 74 immunity and finding the statements were non-actionable (which it didn't), Rapaport's defamation claim still fails because Finkelman's posting of the photograph and statements about it were true. "[T]ruth is an absolute, unqualified defense to a civil defamation action and 'substantial truth' suffices to defeat a charge of libel." *Cortes v. Twenty-First Century Fox America, Inc.*, 285 F. Supp. 3d 629, 642 (S.D.N.Y. 2018) (quoting *Giuffre v. Maxwell*, 15-cv-7433-RWS, 2017 WL 1536009, at *4 (S.D.N.Y. Apr. 27, 2017)). A plaintiff must "plead facts that, if proven, would allow a reasonable

- 34 -

person to consider the statement false." *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 247 (2d Cir. 2017).

Finkelman expressed a desire to "see the <u>fake</u> 'wanted' or 'public enemy' poster." Complaint ¶ 14 (emphasis added). She then said she had received the photo, and posted the photo, with no contrary commentary suggesting she believed the photo communicated anything about Rapaport's tenure at Kirkland & Ellis. *Id.* ¶¶ 15–17. A reasonable person reading Finkelman's posts would understand her to be (1) accepting Rapaport's allegation in *Rapaport I* that the photo was fake; (2) expressing an interest in seeing it for her own and others' amusement; and (3) posting the photo at issue in *Rapaport I*. None of these statements are false. To the extent they communicate any facts at all, which Finkelman maintains they do not, they are completely true. And again, Rapaport admits the photograph Finkelman posted "is a copy of the faked photograph of plaintiff" described in his original complaint in *Rapaport I*. Complaint ¶ 16. Rapaport also filed the same photo as an exhibit to his amended complaint in *Rapaport I*.

In other words, Finkelman accepted Rapaport's representation that the photo was faked, and that is what she said. If she communicated any statement of fact, it was that the photo she was posting was the same photo at issue in *Rapaport I*, and Rapaport has repeatedly confirmed that to be true.

- 35 -

Accordingly, Rapaport's claims separately fail because Finkelman's statements are true as the District Court held.

### 4. Even if actionable, and even if false, Rapaport still failed to state a claim against Finkelman because he did not and cannot make any allegations plausibly demonstrating Finkelman made the statements with actual malice

Even if every basis for the MTD Decision was error (it wasn't), Rapaport's defamation claim was separately lacking because he did not and could not make any allegations that Finkelman acted with actual malice. Actual malice covers "only those false statements made with the high degree of awareness of their probable falsity[.]" *Garrison v. State of La.*, 379 U.S. 64, 74 (1964). The allegations must plausibly allege the defendant knew their statements were false or "permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [the] publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). At the motion to dismiss stage, the plaintiff must plausibly allege some indicia of actual malice. *See BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 822 (S.D.N.Y. 2021) (collecting examples).

Actual malice applies to Rapaport's claims in this case. As explained above, New York Civil Rights Law requires Rapaport to adequately and plausibly allege that Finkelman made the statements alleged to be defamatory "with knowledge of [their] falsity or with reckless disregard of whether [they are] false," Civil Rights

- 36 -

L. § 76-a(2), because they were statements on "any subject other than a purely private matter," *id.* § 76-a(1)(d). Indeed, statements about a judicial proceeding have repeatedly been held to be statements "in connection with an issue of public interest" under New York law. *See, e.g.*, *Atas v. New York Times Co.*, No. 22-cv-853-JPO, 2023 WL 5715617, at *4 (S.D.N.Y. Sept. 5, 2023) (noting defendant's "purported use of the Canadian legal system and the internet as tools of harassment are matters of public concern, rather than 'purely private matter[s]'" (citation omitted)); *Reeves v. Assoc. Newspapers, Ltd.*, 232 A.D.3d 10, 19 (1st Dep't 2024) ("Matters of public interest [] include judicial proceedings….").

"[I]naccuracy itself will not demonstrate 'actual malice' in a libel case." *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1350 (S.D.N.Y. 1977). Nor do allegations of "personal biases," *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020), or an "ulterior motive … [like] a personal desire to harm the subject of a story…." *Bloom v. A360 Media LLC*, No. 23-cv-11024, 2024 WL 2812905, at *5 (S.D.N.Y. June 3, 2024); *see also Prince v. The Intercept*, No. 21-cv-10075, 2023 WL 4492413, at *7–8 (S.D.N.Y. July 12, 2023). But that is all Rapaport offered the District Court and offers here.

Accordingly, Rapaport separately failed to state a claim for defamation because he failed to allege that the statements were made with actual malice.

- 37 -

### B. Rapaport failed to state a claim for false light and invasion of privacy

Rapaport also asserted a claim against Finkelman for "False Light and Invasion of Privacy." The District Court was correct to dismiss it, and it separately fails for additional reasons. First, under New York's choice-of-law analysis, New Jersey law — the law Rapaport claims allows him to assert this separate claim — does not apply, and New York does not recognize a false light or invasion of privacy claim. Second, for all the reasons already stated with respect to Rapaport's defamation claim, even considered on the merits, this claim also fails.

#### 1. New York law applies and New York does not recognize a tort for false light or invasion of privacy

The Complaint says that "[t]his claim is alleged under the laws of the State of New Jersey where plaintiff resided during the events complained of herein." Complaint ¶ 35. This second claim is asserted under New Jersey law because "New York does not recognize a separate cause of action for false light/invasion of privacy." *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 151 (S.D.N.Y. 2022).

"Under New York choice-of-law rules, 'the first step in any choice of law inquiry is to determine whether there is an 'actual conflict' between the rules of the relevant jurisdictions." *Kinsey*, 991 F.3d at 176. Where there is an actual conflict between the laws of two different jurisdictions, New York "applies the law of the

state with the most significant interest in the litigation." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999). In this case, there is a conflict between New York law, which does not recognize Rapaport's claim, and New Jersey law, which does.

In tort cases like this one, "New York 'applies the law of the state with the most significant interest in the litigation.'" *Kinsey*, 991 F.3d at 176 (quoting *Lee*, 166 F.3d at 545). When so-called "conduct-regulating" rules between jurisdictions conflict, "New York law usually applies the traditional law of the place of the tort…." *Kinsey*, 991 F.3d at 176.

In circumstances both similar and exactly analogous to this case, courts have repeatedly applied New York law, especially where the defendant is domiciled in New York and/or the statements emanated from New York. *See, e.g.*, *Kinsey*, 991 F.3d at 175–78; *Jacob*, 626 F. Supp. 3d at 684–86 (S.D.N.Y. 2022); *Prince v. Intercept*, 634 F. Supp. 3d 114, 131–34 (S.D.N.Y. 2022); *Henry*, 629 F. Supp. 3d at 151–52.

This Court's substantive reasoning in *Kinsey* is especially worth noting. In *Kinsey*, the plaintiff argued District of Columbia law should apply because in that case, the plaintiff alleged that relevant "events [] took place at a bar in the District of Columbia and [] adversely affected his employment in the District of Columbia." *Kinsey*, 991 F.3d at 178. The plaintiff also argued that his residence in

- 39 -

Maryland weighed against the application of New York law. *Id.* But despite those connections to the District of Columbia and to Maryland, this Court rejected plaintiff's argument and applied New York law, explaining that the defendant "is domiciled in New York," "the alleged defamatory statement emanated from New York" and "New York has strong policy interests in regulating the conduct of its citizens and its media." *Id.* at 178.

Not only do each of these factors applied in *Kinsey* weigh in favor of the application of New York law here, there are almost no countervailing factors that warrant applying New Jersey law at all. In this case, Finkelman resides in New York and made her statement in New York. In the Complaint, Rapaport alleges: (1) "a substantial part of the events or omissions giving rise to the claims occurred in [S.D.N.Y.]," Complaint ¶ 5; and (2) "[a]s a direct result of defendant's posting, plaintiff has not yet sought admission to the <u>New York</u> bar," *id.* ¶ 7 (emphasis added). And in *Rapaport I*, Rapaport discusses in greater detail how yet more of the relevant facts in this case occurred in New York, including his study and graduation from New York University School of Law, his employment at Kirkland & Ellis in New York, and the location of the security desk where the faked photograph was taken or staged. *Rapaport I* Complaint ¶¶ 1, 9, 23, 37. As the District Court explained, this was relevant not only to the choice-of-law analysis in this case, but also in *Rapaport I* where the District Court also applied New York

law. *See* MTD Decision at 5–6 (citing *Rapaport I*, 2025 WL 966275, at *4–6 (S.D.N.Y. Mar. 31, 2025)). By contrast, in *Kinsey*, the plaintiff not only lived in Maryland but practiced law in (and was admitted to practice law in) the District of Columbia, which was also where the facts at issue in the alleged defamatory statements took place. *See Kinsey*, 991 F.3d at 178. None of these non-New York factors exist in this case.

Rapaport has repeatedly pointed to inapposite decisions that applied another state's law (rather than New York's) under New York choice-of-law analysis because those cases had significant relevant conduct in the other state, rather than in New York. In *Catalanello*, New Jersey law applied because no party was domiciled in New York and none of the facts relevant to the claim emanated from New York. *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 512–13 (S.D.N.Y. 2014). In *Lee*, New Jersey was the "situs of the tort" not just because the plaintiff was domiciled there, but because the "allegedly defamatory actions … took place … in New Jersey." *Lee,* 166 F.3d at 545. In *Machleder*, New Jersey law applied because although the defendant TV station was in New York, the production of the report at issue occurred in New Jersey. *Machleder v. Diaz*, 801 F.2d 46, 52 (2d Cir. 1986). And in *Adelson*, the plaintiff's home state of Nevada had broader interests to protect — a business empire — and the defendants' home state had no factual connections to the dispute beyond their residency. *Adelson v. Harris*, 973 F. Supp.

2d 467, 476–78 (S.D.N.Y. 2013). Indeed, the court cited several decisions — distinguishable in that case but relevant here — explaining that courts in this District apply New York law when the defendant is from New York and there are stronger factual connections to New York. *See id.* at 479 (collecting cases).

Accordingly, New York law applies and forecloses Rapaport's false light and invasion of privacy claim.

### 2. Even if New Jersey law applied, Rapaport failed to state a claim for false light and invasion of privacy

Even if the District Court erred in applying New York law to dismiss the false light and invasion of privacy claim (it didn't), Rapaport still separately failed to state this claim either. Under New Jersey law, "[t]he tort of false light has two elements: (1) 'the false light in which the other was placed would be highly offensive to a reasonable person'; and (2) 'the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 589 (2009) (quoting *Romaine v. Kallinger*, 109 N.J. 282, 294 (1988)). Similarly to defamation, one of the requirements of a false light claim "is, obviously, falsity." *Andros v. Gross*, No. 03-cv-1775, 2005 WL 3500058, at *9 (D.N.J. Dec. 21, 2005). In other words, "[t]ruth is a complete defense to both false light and defamation" claims under New Jersey law. *Arista Records, Inc. v. Flea*

- 42 -

*World, Inc.*, 356 F. Supp. 2d 411, 425 (D.N.J. 2005). Similarly, false light claims

also cannot apply to statements of opinion under New Jersey law. *Id.*[16] New Jersey

also recognizes immunity for fair and true reports of judicial proceedings. *See*

*supra* n.9.

Even if New Jersey law applied, Rapaport did not plausibly allege the basic

elements of a "false light and invasion of privacy" claim for many of the same

reasons he failed to state a claim for defamation. *See Henry*, 629 F. Supp. 3d at

151–52 ("Because his complaint lacks sufficient facts to support his defamation by

implication claim, and there are no additional facts related to his invasion of

privacy claim, his claim fails under Maryland law as well.").

\*     \*     \*

---

[16] Although Rapaport's second count in the Complaint is styled as "False Light and Invasion of Privacy," these are two distinct torts under New Jersey law. "Under New Jersey law, a claim for invasion of privacy 'involves the intentional intrusion, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person.'" *Katz v. Ambit Northeast, LLC*, No. 3:20-cv-1289, 2020 WL 5542780, at \*5 (D.N.J. Sept. 16, 2020) (quoting *Dolphin v. Bank of Am. Mortg. Co.*, 641 Fed. Appx. 131, 134 (3d Cir. 2016)). But whether considering the tort of false light, or the tort of invasion of privacy, Plaintiff's claim fails for the same reasons. *See Ali v. Woodbridge Township Sch. Dist.*, 957 F.3d 174, 183 (3d Cir. 2020) (affirming dismissal of "false light/invasion of privacy" claim because challenged statements failed to state a defamation claim, were opinions, and were true). There are additional reasons why an invasion of privacy claim would fail. *See Katz*, 2020 WL 5542780, at \*5 (dismissing invasion of privacy claim because Rapaport could not allege any plausible reasonable expectation of privacy).

For all the reasons explained above, the District Court's reasoned analysis thoroughly addressed many of the deficiencies of Rapaport's claims. There are additional reasons the District Court did not reach that would have also yielded the same result. The District Court's grant of the motion to dismiss with prejudice should be affirmed.

## II. The District Court's denial-as-moot of Rapaport's sanctions motion should be affirmed

As explained above, Rapaport's motion for sanctions under the District Court's inherent authority was predicated on arguing that Finkelman's positions on Rapaport's claims — asserted in a letter requesting the District Court retain jurisdiction over Rapaport's former attorney, and another providing Rule 11(c) notice — were supposedly lacking in any support. Not only were they meritorious, the District Court agreed with Finkelman on every issue it considered. The District Court therefore properly denied the motion as moot.[17]

Under the inherent powers of a court, "if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party." *Chambers v. NASCO, Inc.*, 501 U.S.

---

[17] In his brief for the first time, Rapaport raises 28 U.S.C. § 1927 as a purported basis for sanctions, but this was not part of his underlying motion and, in any case, for the same reasons explained elsewhere in this brief, cannot provide a basis for sanctions based on legal positions the District Court adopted as meritorious. *See* Rapaport Br. at 26.

32, 46 (1991) (quoting *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)). This inheres from a court's "power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers*, 501 U.S. at 43 (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821)). However, the Supreme Court has cautioned that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Heeding this caution, this Court requires "clear evidence that the challenged actions are *entirely without color*, and [are taken] for reasons of harassment or delay or for other improper purposes[,] and a high degree of specificity in the factual findings of [the] lower courts." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (emphasis and alterations in original) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986)); *accord. Schlaifer Nance & Co., v. Estate of Warhol,* 194 F.3d 323, 336 (2d Cir. 1999).

To be entirely without color, the claim must "lack[] *any* legal or factual basis," and be "utterly devoid of a legal or factual basis." *Schlaifer Nance & Co.,* 194 F.3d at 337 (emphasis in original). In contrast, a claim that "reasonably *might* be successful" is colorable. *Schlaifer Nance & Co.,* 194 F.3d at 337 (emphasis in original). In addition to being without color, sanctionable claims must have been made in bad faith, meaning with a purpose such as harassment or delay. *Schlaifer Nance & Co.,* 194 F.3d at 336. Bad faith requires actions that go further than mere

- 45 -

"'false statements, half-truths and misleading statements' that . . . represent attorney argument." *Rates Tech. Inc. v. Broadvox Holding Co.*, 56 F. Supp. 3d 515, 531 (S.D.N.Y. 2014). Moreover, the movant must establish bad faith by clear and convincing evidence, *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020), and the presence of another equally plausible explanation other than bad faith militates against a conclusion of bad faith, *see Rates Tech. Inc.*, 56 F. Supp. 3d at 528–29 (rejecting bad faith where there were other "equally plausible scenario[s] exist[]").

The letters at issue raised good-faith positions that were ultimately <u>adopted by the District Court</u>. *See* App'x 66; *see also* MTD Decision. It is axiomatic that a party's prevailing position adopted by the District Court cannot be lacking in <u>any</u> legal or factual basis. It was not just that the arguments "reasonably might [have] be[en] successful;" they <u>were successful</u>.

For the same reasons, there was no basis to impose sanctions under Judiciary Law § 487. Claims under Judiciary Law § 487 do not extend to "expressions of views concerning what the law is or should be, nor does it include merely poor lawyering, negligent legal research or the giving of questionable legal advice," including "nonmeritorious legal arguments." *Urias v. Daniel P. Buttafuoco & Assocs., PLLC*, 238 N.E.3d 836, 842 (N.Y. 2024) (quoting *Bill Birds v. Stein Law Firm, P.C.*, 149 N.E.3d 888, 892, 892 n.3 (N.Y. 2020)). These were meritorious

- 46 -

(indeed, prevailing) legal arguments. Furthermore, as explained above, Judiciary Law § 487 is procedurally inapplicable in this case for multiple reasons. *See supra* n 5.

### III. This Court cannot consider any additional issues raised by Rapaport in his brief because it lacks jurisdiction because of the scope of the notice of appeal

Rapaport raises a variety of other issues in his brief that are currently pending before the District Court, interlocutory decisions not subject to appeal, not within the scope of the notice of appeal he elected to file, or all of those at once. Rapaport's notice of appeal sought appeal from the MTD Decision and nothing else. App'x 593.[18] Issues from proceedings before the District Court that are outside the scope of the appellant's notice of appeal are not properly before this Court, and this Court cannot grant any relief as to those issues. *See, e.g.*, *Waterkeeper All., Inc. v. Salt*, 829 Fed. Appx. 541, 542 (2d Cir. 2020) (summary order); *Sorensen v. City of New York*, 413 F.3d 292, 295–96 (2d Cir. 2005).

Accordingly, this Court lacks jurisdiction to consider any other issues raised by Finkelman, and must focus its assessment on the merits to the grant of the

---

[18] Indeed, Rapaport's notice of appeal did not even specify that he wished to appeal from all parts of the MTD Decision, instead only specifying the parts of the decision related to "[d]ismiss[al] with prejudice [of] all claims against defendant Finkelman, the sole defendant." ECF no. 71 at 1. Accordingly, it is unclear whether this Court may consider any arguments he raised concerning his denied sanctions motion.

motion to dismiss and the denial-as-moot of Rapaport's motion for sanctions under the District Court's inherent authority. The District Court should be affirmed on both issues for the reasons explained above, and accordingly this Court should affirm in this appeal, allowing other pending proceedings (i.e., Finkelman's pending motions for sanctions or, in the alternative, anti-SLAPP fees) before the District Court to proceed to a final judgment.

## CONCLUSION

For these reasons, this Court should affirm the District Court's decision granting Finkelman's motion to dismiss and denying Rapaport's motion for sanctions, with costs for this appeal being taxed to Rapaport.

Dated: February 26, 2026
New York, NY

Respectfully submitted,

**LAW OFFICE OF MAX RODRIGUEZ PLLC**

By:       */s/ Max Rodriguez*

Max Rodriguez
575 5th Avenue, 14th Floor
New York, NY 10017
(646) 741-5167
max@maxrodriguez.law

*Counsel for Defendant-Appellee,*
*Abigail Finkelman*

- 48 -

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii), as modified by Local Rule 32.1(4)(B), because this brief contains 11,818 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman style.

Dated: February 26, 2026
New York, NY

**LAW OFFICE OF MAX RODRIGUEZ PLLC**

By: */s/ Max Rodriguez*

Max Rodriguez
575 5th Avenue, 14th Floor
New York, NY 10017
(646) 741-5167
max@maxrodriguez.law

*Counsel for Defendant-Appellee,*
*Abigail Finkelman*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 26, 2026, a true and correct copy of the

foregoing was served via ACMS to all counsel of record or parties *pro se*.

Dated: February 26, 2026
New York, New York

LAW OFFICE OF MAX RODRIGUEZ
PLLC

By:    /s/ *Max Rodriguez*

Max Rodriguez
575 5th Avenue
14th Floor
New York, NY 10017
(646) 741-5167
max@maxrodriguez.law

*Counsel for Defendant-Appellee*
*Abigail Finkelman*