# No. 25-2247

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

GIDEON RAPAPORT, an individual,

*Plaintiff-Appellant,*

—against—

ABIGAIL FINKELMAN, an individual,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK

Case No. 1:24-cv-05439-JGLC, Hon. Jessica G. L. Clarke

---

## REPLY BRIEF OF PLAINTIFF-APPELLANT

---

GIDEON RAPAPORT, *pro se*
#627 1078 Summit Avenue
Jersey City, New Jersey 07307
Telephone: (862) 213-0895

# **TABLE OF CONTENTS**

REPLY TO JURISDICTIONAL ISSUE RAISED ...........................................................1

REPLY TO STATEMENT OF THE CASE...........................................................  2

STANDARD OF REVIEW ...........................................................8

REPLY TO ARGUMENT ...........................................................10

CONCLUSION ...........................................................17

## <u>REPLY TO JURISDICTIONAL ISSUE RAISED</u>

As to the scope of this appeal, defendant Finkelman asserts F Brief at 48 that because the plaintiff, in his notice of appeal, described the order appealed as "the order entered on August 29, 2025 that 'Dismissed with prejudice all claims against defendant Finkelman, the sole defendant.'" that the plaintiff's appeal must be limited to that element of the description and no other facet of the order.

This is false, and represents an attempt to continue an interpretation of FRAP 3 requirements as to notices of appeal that was likely always wrong, but has since been eliminated by the 2021 rewrite of the rule to clearly indicate that while the order must be described, the entirety of it goes on appeal. FRAP 3(c)(6) provides: "An appellant may designate only part of a judgment or appealable order by expressly stating that the notice of appeal is so limited. Without such an express statement, specific designations do not limit the scope of the notice of appeal." Relevantly, the aspects of the order also the vacating of the plaintiff's motion for sanctions (for defendant Finkelman's abuse of the sanctions process under inherent authority), and the refusal to consider any FRCP Rule 59 or 60 motion. Defendant Finkelman's authority suggesting otherwise is all pre-2021, and the plaintiff made no express statement as to any limitation of the notice of appeal.

Relating to the notice of appeal, the plaintiff would also respectfully draw the Court's attention to the District Clerk's initial refusal to accept its filing because the Clerk decided that the order dismissing all of the plaintiff's claims with prejudice was

1

not final. Upon the insistence of the plaintiff, and briefing to the effect that the duty to accept and act upon such a notice of appeal is ministerial rather than discretionary, the Clerk accepted and acted upon the notice of appeal the second time the plaintiff (still timely) filed it.

### <u>REPLY TO STATEMENT OF THE CASE</u>

Defendant Finkelman's statement of the case is remarkable for what it ignores, what it admits, and what it asserts that cannot possibly be so.

<u>Firstly</u>, for that which it ignores. For the purposes of both true and fair report privilege analysis under NY Civil Rights Law § 74 and actual malice analysis, defendant Finkelman ignores her labelling of the plaintiff as a "monster" created by "ghouls" A32, her comparison of him to Sephiroth[1] A30, an arch-villain from the *Final Fantasy* series of Japanese computer role-playing games or her fabrication of fake quotations in order to contradict the material in the record for the admitted purposes of degrading the plaintiff A15, and mocking the plaintiff's former-counsel on the basis of his age A34. Defendant Finkelman also conveniently ignores the fact that when asked by one of her followers "Does your anonymous tipster know what this jack weasel is alleged to have done?" she replied with the text emoji "¯\\_(ツ)_/¯" , indicated the clearest possible

---

[1] According to Wikipedia as accessed on 3/10/2026: "Sephiroth (Japanese: セフィロス, Hepburn: Sefirosu) is a character and the main antagonist of Square's 1997 role-playing video game Final Fantasy VII. A former soldier of the megacorporation Shinra and the coworker of Zack Fair and superior of Cloud Strife, he possesses superhuman physiology as a result of an experiment in which Shinra injected him with cells from the extraterrestrial lifeform Jenova when he was still a fetus. Upon discovering this, Sephiroth becomes consumed by rage and vengeance, decides to take control of the Planet by harnessing its life force and annihilating all life on it to become a god amidst the destruction. Sephiroth's background and role in the story are expanded upon in the Compilation of Final Fantasy VII. Additionally, he appears as a guest character in other video games and media, such as a recurring boss in the Kingdom Hearts series and as a playable character in Super Smash Bros. Ultimate."

expression of reckless disregard for the truth, and actual malice against the plaintiff A46. The District, like defendant Finkelman here, ignored these facts and thus their dispositive impact upon the true and fair report privilege analysis, which was the basis for dismissing the defamation claims. The plaintiff respectfully contends that such material as defendant Finkelman put out cannot be a fair and true report as the District found, as will be further elaborated in the Argument section.

Secondly, defendant Finkelman's Statement of the Case and brief in general is remarkable in that which she admits. Defendant Finkelman admits to actual malice by admitting knowledge and belief that the defamatory forgery was in fact false, which could be inferred from her conduct, but is now admitted in litigation F Brief 16. She does so in order to support a bizarre and fantastic theory that her republication of defamatory material was or became "true" because both she and the plaintiff now agree that she republished a forgery bearing falsehoods. In other words, she admits to republication, because if she had published something other than one of the defamations being litigated in *Rapaport v. Doe 1 et al.* brought by those defendants (which were identified by a subpoena response), she would be a publisher and not a republisher. Her approach would give the defense of truth to any republisher of defamation as long as they reproduced the original defamation exactly, and thus eliminate republication liability in all possible cases. She represents this separately from her defenses arising

3

from the fair and true report privilege F Brief 16: "even if Civil Rights Law § 74 did not immunize".

Defendant Finkelman also repeatedly admits that she engaged in her series of posts in order to mock and humiliate the plaintiff, as well as express opinions as to the underlying claims of that action. This clearly contradicts her assertion of the fair and true report privilege, and also her assertions elsewhere in her brief that the plaintiff did not provide any examples supporting an inference of actual malice F Brief 36, when she provides many of them herself F Brief 4-5,31-32 (but also ignores some, as described in the first part), including the remarkable confession that she herself believed the fake to be fake when she republished it F Brief 16.

Thirdly, as to her impossible assertions. Defendant Finkelman asserts that the plaintiff only brought a claim for defamation per se. This is false, and one must only read the Complaint to see so A9-10, which brought an action for "Defamation", and identified that it was committed in regard to *per se* categories, and also beyond those categories alleging special damages. Defendant Finkelman also asserts that defamation per se cannot be perpetrated by implication, which is clearly false because defamation per se is defined by the categories of meaning of the defamation, not whether that meaning is conveyed explicitly or implicitly. In other words, the subject of the defamation (in this case falsehoods relating to the plaintiff's profession and falsely alleged criminal conduct). It is also unclear why she would present this legal argument,

4

without any support no less, in this section of the brief for any other reason than that it has no legal support whatsoever.

Defendant Finkelman also attempts to deceive this Court as to the basis for the plaintiff's sanctions motion under inherent authority by pretending that it related to her motion to dismiss, it did not. That motion was brought solely against her threatened, filed and refiled motion for sanctions which was and is itself an abuse of process brought baselessly, frivolously and vexatiously against the plaintiff. The District's (incorrect) acceptance of defendant Finkelman's positions as to dismissal, does not mean that she did not abuse the sanctions process, nor that the plaintiff should be sanctioned for having his case dismissed. In her concept, every dismissal would require sanctions, as she fails to identify any lack of support or improper motive on the part of the plaintiff. To satisfy the latter requirement she has never been able to muster more than the allegation that the plaintiff, by serving her by her legal name instead of "Mrs. Detective Pikajew Esq." violated a privacy right which she herself admits does not exist under New York law or mentioning in the context of background information that she is an attorney. Furthermore, her representation as to the interplay between a dismissal and sanctions moved for by the defendant, would mean that a defendant who prevails on a motion to dismiss, may thus have necessarily had a sufficient basis to burden the plaintiff (*pro se* in this case no less) with sanctions even when it is obvious from the

5

outset that the plaintiff has a strong basis and no improper motive. Why then, should not every defendant move for sanctions alongside a motion to dismiss?

Defendant Finkelman's false and baseless assertion that the plaintiff filed a "duplicative" action of this action F Brief 6 underscores her consistent underhanded attempts to deprive the plaintiff of due process and access to justice by abuse of process. The subsequent related action is a declaratory judgment action containing no coercive claims, and was filed pertained solely to obtain an adjudication pertaining to claims that Finkelman herself threatened the bring per NY CLR 70-a both at the outset of this litigation A228, and at the TRO/PI emergency hearing that she herself demanded See September 10 Hearing. Defendant Finkelman was severely lacking in all required categories for such extraordinary relief per the District A608-612. The plaintiff respectfully represents to the Court that such a filing ban baselessly requested by defendant Finkelman was part of an attempt to extort the plaintiff, and prevent him from timely filing his notice of appeal, especially after the District Clerk initially refused to accept that filing after reaching the incorrect conclusion that the order was not final.

Additionally, beyond these three categories, defendant Finkelman also lays out other assertions opposed by the plaintiff, some of these are listed below:

Her attempt to conflate the meaning of a "thread" in the context of the website X, formerly known as Twitter. Although often bringing up a few parts of the chain before an after, every post on the website has a unique address, and may be separately linked to

6

or republished, apart from the rest of the thread. In this the thread is far from an article, potentially revised in multiple editions or added to. Defendant Finkelman herself has linked directly to her post republishing the defamatory forgery rather than to any other. There is no guarantee that posts that are part of a thread will appear together or which of them may appear strung together, and often they appear alone or in different orders. Furthermore, the choice of this format underscores the lack of seriousness in attempting to provide a fair and true report on the subject matter, as David Lat did on his Substack blog and the Above The Law article entered into the record by defendant Finkelman A128-137.

Her assertion that the plaintiff is at fault for a leave-to-file requirement. Rather, this was offered by the District court to appease her, without objection by the plaintiff, due to the repeated collateral issues (such as via letters) and proceedings manufactured by defendant Finkelman (such as her filing ban TRO/PI demanded which failed every criteria of analysis or repeated sanctions motions). Defendant Finkelman, through her counsel, has reflexively described almost every filing by the plaintiff as patently frivolous[2], and expressed an expectation that any motion or claim brought by the plaintiff should be stricken *sua sponte*. In fact, she has dramatically described the plaintiff's filing of ordinary procedural motions to extend time, expedite discovery to

---

2  Indeed the Court should do a Ctrl-F search of the appendices and discover this automatic and pathological reflex by defendant Finkelman's counsel utilizing the words 'patently' 'baseless' 'frivolous' 'sua sponte' rooted in the belief that only he may file anything or influence the course of litigation. This attitude is also manifest in his assertion that he already knew that the plaintiff could have no "colorable basis" A560 for any potential motion in the future, and should be required to obtain leave from him prior to any motion.

obtain factual information related to her sanctions motion and (or alternatively) to stay the sanctions as a "flurry" of motions somehow conspiring to obstruct justice.

Her assertion that because she partially quoted the language "fake wanted poster" (and then tries to detach the "fake" component as a standalone) prior to obtaining and republishing the defamatory forged image, while admittedly mocking and raising doubts as the plaintiff's claims in the *Doe* action, she is immune from republishing, without any warning or caveat, the defamatory forged image is wrong on two counts. Firstly it is literally inapplicable, because the defamatory forged image featuring a "Do Not Admit" poster was not and was never alleged to be a "wanted poster" real or fake, rather only arranged like such a stereotypical poster with the image of the subject person in the middle. It still possible for a real "Do Not Admit" wanted poster to be styled and decorated as a stereotypical "wanted poster". Secondly, in the distinct post which republished the defamatory material, she did not provide any caveat or indication that it was in fact a forgery created with digital image manipulation techniques, and rather credited it to "an anonymous tipster" thus imbuing it with credibility, especially in light of the admitted non-credibility she admittedly assigns to the plaintiff's complaint in the Doe action.

## **STANDARD OF REVIEW**

This Court "review[s] the grant of a motion to dismiss under Rule 12(b)(6) *de novo*, construing the complaint liberally, accepting all factual allegations in the

complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. New York Times*, 940 F.3d 804 (2019) citing

*Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). A plaintiff need only state a claim to relief that is plausible, *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012), an "exceedingly low" burden, *Elias*, 872 F.3d at 111 and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Anderson News*, 680 F.3d at 184-85 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

This Court reviews the denial (or grant) of a motion for sanctions under an abuse of discretion standard "We review all aspects of a District Court's decision to impose sanctions for abuse of discretion." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999) citing *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 154 (2d Cir. 1997) (addressing sanctions under Rule 11, 1927, and inherent power). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 385 at 405; accord *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 92 (2d Cir. 1999) (per curiam).

This Court reviews a district court's denial of a motion under Federal Rule of Civil Procedure 59(e) or Rule 60(b) for abuse of discretion. A district court necessarily abuses that discretion when its decision rests on a clearly erroneous assessment of the facts or

9

an error of law, including the failure to recognize "clear error" warranting Rule 59(e)

relief or "extraordinary circumstances" justifying Rule 60(b) relief. See *Williams v.*

*Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011); *In re 310 Assocs.*, 346 F.3d 31, 35 (2d

Cir. 2003); *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 141 (2d Cir. 2008). Where,

as here, the district court denies such relief despite undisputed record evidence

establishing manifest errors of law or fact that produce a plainly unjust result, or where

the court misapprehends controlling Second Circuit authority or binding state law in a

manner that is indisputably wrong, the denial falls outside the bounds of permissible

discretion and constitutes reversible clear error. See *Zervos v. Verizon N.Y., Inc.*, 252 F.3d

163, 169 (2d Cir. 2001); *Sussman v. Bank of Israel*, 56 F.3d 450, 456 (2d Cir. 1995).

## <u>REPLY TO ARGUMENT</u>

At F Brief 12, defendant Finkelman attempts to defend the District's clear

contradiction of well-settled law, which is that the same set of facts may give rise to

claims under the laws of different jurisdictions. No amount of circular reasoning and

minor factual differences between cases can justify using the wrong standard from

the start.

In the related action *Rapaport v. Doe 1 et al.*, where the District purported to

analyze this issue more thoroughly, it simply concluded that it "declines to invoke the

doctrine of dépeçage" 23-cv-06709 Dkt. 101 at 11. The New York Court of Appeals

10

has ruled that "[T]here is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction" *Babcock v. Jackson*, 191 N.E.2d 279, 12 N.Y.2d 473 (N.Y. 1963) at 484; *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46 (E.D. N.Y. 2000); *Hamilton v. Accu-Tek*, 47 F. Supp. 2d 330 (E.D. N.Y. 1999). Regardless of where the conduct occurred (in *Babcock* all conduct occurred in Ontario, Canada) the jurisdictional interests must be assessed, and the New Jersey interest in protecting the New Jersey plaintiff outweighs the New York interest, which does not even take an interest in this tort or conduct at all. This view was already adopted in *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 512 (S.D.N.Y. 2014) and favorably cited in *Kinsey v. New York Times Co.*, 991 F.3d 171 n.21 (2d Cir. 2021). See R Brief 22-25.

At F Brief 13 it is asserted that the plaintiff has somehow conceded that if the defamatory forged image were originally filed in the record that its republication would not be defamatory. That is not so, and there is no basis to find such a concession on the part of the plaintiff. Rather, because it was not in the record, even a fair and true report that contained it would not have immunity (defendant Finkelman's republication is not a report let alone a fair and true one).

At F Brief 14, the wrong test is offered relating to the fair and true report standard. It is wrongly suggested that immunity may be had when the only part that is accurate "or fair and true" is the part that reproduces the defamatory allegation, here

11

just the photograph alone. Such an interpretation would eliminate republication liability, as long as the defamatory material were republished exactly. Rather, the whole report must be "fair and true". "Indeed, New York courts have held that 'once it is established that the publication is reporting on a judicial proceeding, how a reporter gathers his information concerning a judicial proceeding is immaterial provided his [or her] story is a fair and substantially accurate portrayal of the events in question.'" *Biro v. Conde Nast*, 883 F. Supp. 2d at 478 (quoting *Cholowsky v. Civiletti*, 887 N.Y.S.2d at 596). In *Carroll v. Trump*, No. 1:22-cv10016 (LAK), 2023 WL 2006312 (S.D.N.Y. Mar. 28, 2023) it was found that the § 74 defense was not available to a defendant because they repeated the defamation (even though they repeated it accurately) that was the litigated in the prior action because of added commentary and that they failed to be sufficiently neutral or accurate much like defendant Finkelman here, and thus did not qualify even for "report" let alone "fair and true" status. *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000) also emphasized the approach of taking the material and evaluating it as a whole. Taking the District and Finkelman's view, as long as the prior defamation being litigated was accurately repeated, the repetition would be immune notwithstanding every possible other part of the "report" not being fair and true.

At F Brief 14 defendant Finkelman contradicts herself where elsewhere she contradicts the District's contention that she did not give an opinion. Elsewhere she

has claimed that she represented that it is "fake" at F Brief 16 (though she did so in a separate post referring to a fake wanted poster, and prior to receiving the defamatory forged image).

At F Brief 15 footnote 8, defendant Finkelman appeals to *Holy Spirit Assn. for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 67 (1979) and *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 524 (S.D.N.Y. 2013), but her post or series of posts (if collected together into a report, which is dubious) do not qualify even for a generous interpretation of substantial accuracy, because they were so depleted of accurate or relevant information relating to the proceeding, while also including so much irrelevant, offensive and false (including fake quotations), that a reasonable reader could never reach substantially the same as if they had reviewed the proceedings themselves.

At F Brief 16 defendant Finkelman's assertion that "truth" is a defense available to a republisher of admittedly false (or "fake" as she herself now admits) defamatory material, simply because the victim of the defamation claims that material to be defamatory is unsupported, absurd and kafkaesque. The material must be evaluated itself, not the opinion of the republisher, who knowing it is false, republishes it anyway with actual malice. The fact that defendant Finkelman and the plaintiff now agree that the material is false, and was false when defendant Finkelman republished it does not make it "true".

13

At F Brief 23 defendant Finkelman claims that the plaintiff predicates his claims on the theory that true and fair report privilege does not apply when the republisher did not obtain the material from the judicial proceeding. The plaintiff has never asserted this, rather he claims that the privilege does not apply in the first place, because it was never in the record of the judicial proceeding, regardless of where defendant Finkelman obtained it. Counter-factually, if the image were in the record, but defendant Finkelman obtained it from a third party, that scope limitation upon section 74 would not apply.

At F Brief 24 defendant Finkelman summarizes the true and fair report standard as so: A statement qualifies for the privilege if "the ordinary viewer or reader can determine from the publication itself that the publication is reporting on [a judicial] proceeding.'" *Kinsey v. New York Times Co.*, 991 F.3d 171, 179 (2d Cir. 2021). And a statement to which the immunity applies is "fair and true" if "it is substantially accurate, that is if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Id*. at 178; *Bouchard v. Daily Gazette Co.*, 136 A.D.3d 1233, 1234 (3d Dep't 2016)". The plaintiff does not object to this definition, but rather to the finding, which may be reviewed here *de novo*, that defendant Finkelman's A9-46 series of posts do not produce a different effect on a reader than would a report containing the precise truth.

14

Indeed defendant Finkelman has gone to great pains to ensure that she would succeed in mocking and degrading the plaintiff, as she admits throughout her briefing.

At F Brief 26 defendant Finkelman claims that *Fishof v. Abady*, 280 A.D.2d 417, 417–18 (1st Dep't 2001) allows for the republication of the defamation which was at the centre of the prior defamation action by attempting to pass it off as mere "background material". Such an exact republication was denied protection under the theory in question in *Carroll v. Trump*, No. 1:22-cv10016 (LAK), 2023 WL 2006312 (S.D.N.Y. Mar. 28, 2023).

At F Brief 30, defendant Finkelman pretends that the plaintiff's defamation claim is predicated on anything other than her republication of the defamatory forged image, which falsely portrays the plaintiff as a dangerous *persona non grata* trespasser, and employee fired for sexual harassment, as viewed in the context that defendant Finkelman insists must be considered. Defendant Finkelman's fake quotations, "monster" created by "ghouls" labelling and Japanese anime villain comparison are not alleged to be defamatory, but clearly prevent her series of posts from being considered a fair and true report, even if those separate posts cobbled together into a "report".

At F Brief 34 defendant Finkelman expands upon her absurd definition of truth. According to this view, as long as one exactly copies a defamation that one is republishing, the material ceases to be a defamation and becomes immune as being

15

"true". This is ludicrous, and would eliminate all republication liability for defamation.

At F Brief 36 defendant Finkelman denies that the plaintiff has demonstrated actual malice, even after she has admitted to republishing the defamatory material knowing it was false, and even light of the substantial indicia of malice she admits to in her briefing (not to mention that which she ignores like her labelling of the plaintiff as a "monster" created by "ghouls").

At F Brief 44, defendant Finkelman suggests an improper bringing of sanctions under inherent authority. As a practical matter, due to the 21-day safe-harbor requirement of Rule 11, inherent authority – as opposed to Rule 11 sanctions – is the only way feasible means to protect a party from an abuse of the sanctions process itself, as defendant Finkelman has repeatedly attempted.

At F Brief 46, defendant Finkelman conflates the arguments raised in her motion to dismiss with those for her sanctions motion. The plaintiff has not predicated his sanctions motion on the baselessness of the motion to dismiss evaluated according to its standard, but rather of the motion for sanctions, which must prove not the incorrectness, but rather the total baselessness and frivolity of the action, as well as improper purpose.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff-Appellant respectfully requests that the Court reverse the district court's judgment dismissing his defamation and false light and invasion of privacy claims against Defendant-Appellee, remand this case with instructions to the district court that the parties proceed to discovery.


Respectfully submitted,


/s/ Gideon Rapaport

Gideon Rapaport, *pro se*
#627 1078 Summit Avenue
Jersey City, NJ 07307
GideonRapaportLaw@Outlook.com
(862)-213-0895

17